Wood, et al vs. Bangs, et al.

---

WOOD, ET AL V. BANGS, ET AL.

*1. INJUNCTION:* WHEN GRANTED: RULE. An injunction will not be granted to restrain the doing of an act which is unlawful and irregular, unless substantial and positive injury will result from a refusal to grant the writ.

*2. ————: ————: ————.* An injunction will never be granted when it will be productive of hardship, oppression or injustice, or public or private mischief.

*3. ————: ————: ————.* The granting or refusing an injunction rests in the sound discretion of the court, and will never be granted when the benefits secured by it to one party is of but little importance, while it will operate oppressively, and to the great annoyance and injury of the other party; unless the wrong complained of is so wanton and unprovoked in its character, as

Wood, et al vs. Bangs, et al.

properly to deprive the wrong doer of the benefit of any consideration as to its injurious consequences.

4. *ACTION:* PARTIES: JOINDER.   Two or more persons cannot for themselves, and on behalf of other tax payers of the county, be joined in an action to restrain the proper officers from paying county warrants, alleged to have been issued without authority of law, and to have them adjudged illegal and cancelled.

5. ———: ———: ———.   Money for the payment of county warrants can only be raised by taxation, and such taxation must effect the property of all tax payers alike, and persons having no common right or common interest in the property taxed cannot join in an action to restrain its levy or collection. *Argu:*—the tax is upon and against the individual property of each tax payer, and that if there is any injury, it is an injury to the property and rights of each tax payer alone, and not an injury affecting a common right or interest.

6. *CONTRACT:* ILLEGAL: EQUITABLE RELIEF.   E and C, under a contract with the board of county commissioners, erected for the county a court house building; no proceedings were instituted to prevent the execution of the contract, or to restrain the issuance of warrants for work done until the building was completed, and accepted by the board.   *Held:*—that before any action could be maintained by or on behalf of tax payers for equitable relief on the grounds of the illegality of the contract, there should be restored to the contractors what they had expended in labor, money and material.

7. *LEGAL REMEDY:* WHEN PURSUED.   Where a statute confers upon public officials, authority to do an act, and the same statute points out the remedy to any party aggrieved, such party must pursue his legal remedy, and will not be granted relief in a court of equity.

8. ———: ———: ———.   Where by statutory provision a party aggrieved has an appeal to the District Court from any decision of the board of county commissioners upon any matter properly before them, such legal remedy must be pursued, and equitable relief cannot be invoked.

## Appeal from Bon Homme County District Court.

THIS is an action brought by certain citizens and tax payers of Bon Homme county against the county commissioners, clerk and treasurer of said Bon Homme county, English and Calhoun, contractors, and others, holders of warrants issued on said contract, to restrain the issue, receipt and collection of certain county warrants of said Bon Homme county, in accordance with a contract entered into by and between the county commissioners of Bon Homme county, and English and Calhoun, contractors for the erection of a court house in said Bon Homme county, which contract plaintiffs allege to

be unauthorized under the statutes, illegal and void, and pray that the same may be declared null and void; that the warrants already received be delivered up and cancelled, and the commissioners be perpetually enjoined from further issue of such warrants under the contract.

The action was tried by BARNES, J., at the October term of the District Court, Bon Homme county, in 1873, and a decision made and filed on the 2d day of February, 1874, in which he finds that the commissioners were authorized to enter into the contract without submitting the question to the voters of the county, but that the issue of the warrants to be paid out of the taxes of 1874 was unauthorized until the arrival of the time for the levy of the tax of 1874. And as to these warrants, the temporary injunction was continued in force until the levy of such tax, and as to all other things was dissolved, to which findings and conclusions plaintiffs except and appeal from the decree entered therein to this court.

*Bartlett Tripp*, for appellants.

Plaintiffs claim that the contract was unauthorized on the part of the county commissioners and therefore void. That counties at most are only quasi corporations, and have no powers to act except as expressly given by statute, and all who deal with them are bound to know the extent of their power to contract. (*Soper v. Henry County*, 26 Iowa, 267; *Williams v. Peinny et al*, 25 Iowa, 436; Fry on specific performance, 216, note [1]; *Ætna Ins. Co. v. Harvey*, 11 Wis., 212; 46 Mo., 505; Dwarris on Statutes, 275, 20 N. Y., 312.) If then they have power to erect public buildings it is derived from the statute in general or express terms; if the power is expressly given, by that we must be governed, and not by the general enumerated powers. The power is expressly given under one statute: (Laws of 1868–9, page 174, § 27.) So we are saved any examination of the general powers given to the commissioners.

It is claimed by defendants that this section which gives them express power and authority to contract for and erect court houses, by implication gives them authority to provide

means for the payment of the same. There would be force to the argument if the same statute which provides for the erection did not also provide means and the manner of paying therefor. If this section 27, or the first part of it stood alone, there would be some authority for the position. But the rule is the other way, where a statute gives a power and at the same time gives a means of exercising it, and is put very tersely by Chief Justice Parsons that: " When a statute gives a new power and at the same time gives a means of executing it, those who claim the power can exercise it in no other way." (*Franklin Glass Company v. White*, 14 Mass., 286-9; Dwarris on statutes 275, note 5, cases cited; *Stewart v. Otoe County*, 2 Neb., 177.) To be sure the commissioners may erect court houses but they must erect them in the way pointed out by chapter 4, laws of 1868-9, and no other. Section 18 provides that they shall have power to submit to the people of the county any question involving an extraordinary outlay of money by the county, and it is contended that this is not an extraordinary outlay of money. It might not be for a populous county—it would not be for the city of New York. But what would be an extraordinary outlay for Bon Homme county if this was not one? It is admitted that the total valuation for 1873 was not to exceed $150,000, and that the tax allowed to be levied for county purposes could not exceed 4 mills, and that the valuation for 1874 would not exceed $200,000, which would make the highest rate for all county purposes that could be raised in those two years, $1,400, and yet it is claimed that a proposed expenditure of almost two and a half times the entire revenue of the two years covered by the contract, was not an extraordinary one. The county commissioners of Bon Homme county made a contract to pay $3,333 out of the revenue of the years 1873-4, the amount of which could not exceed $1,400 in all, and based upon the valuation of 1873 would amount to but $1,200. Of course what is to be considered an extraordinary outlay is to be decided very much by surrounding circumstances and the evidence adduced of the valuation, the amount of tax allowed by statute, etc. But the legislature itself has furnished a

solution of the question and given a definition in section 109, page 305, laws of 1868–9, in the words: "If the county commissioners deem any expenditure necessary, greater in amount than can be provided for by the annual tax, they shall require a vote of the county thereon, either at a general election or one called especially for the purpose." And as if with intent to point out how the public buildings of the county are to be erected, and to limit the taxation for the same, the very section that provides for their erection provides also that the amount of taxes to be levied for county purposes shall be levied according to this same chapter 4, and chapter 25 of 1868–9. If then the question turns upon whether the erection of the court house involves an extraordinary outlay of money, we claim the court erred in finding in the face of the testimony and statutes that it was not an extraordinary outlay.

But we claim the erection of a court house of this character comes within the " public buildings," provided for by section 22 of same chapter 4, page 173, and if so within the rule of Chief Justice Parsons, above cited, that when a new power is given and a means of executing it is also given, it can be executed in no other way. There can be no doubt but the county commissioners have given them the express power to erect county buildings. It is also clear they have no such power outside of the statute—no common law power. It is also clear, that the statute gives them the power to incur an indebtedness therefor in a certain way. Can they then incur the indebtedness in any other way than the one pointed out by statute? The authorities above cited say they cannot.

Again, if the expenditure was not such an extraordinary outlay of money as the statute contemplates should have been submitted to the people, the contract was void and illegal in this, that the commissioners contracted to pay for the court house in warrants to be issued on or before November 1, 1873, the sum of $3,333, one-half of that sum to be paid out of taxes to be levied in 1874. They contract to draw $1,666.50 in warrants upon the taxes of 1873, and $1,666.50 upon the taxes of 1874, when the highest tax that could be raised upon the valuation of 1873 was $600, and the estimated valuation of

1874, $200,000, was $800—an excess of $1,066.50 in 1873, and $866.50 in 1874, over all the taxes of these years permitted to be levied without a vote of the people, and these warrants were to be issued, by the contract, as the work progressed, the last payment to be made on the completion of the building November 1, 1873. Now if the court holds that under the statute of 1868–9 the county could incur the indebtedness of the erection of the court house in any other way than as therein provided, it had no power to contract to issue " county warrants amounting in the aggregate to a .sum larger than the county tax for the year in which they are issued, unless the county commissioners shall first be authorized by a majority of the legal votes of said county. (Chap. 25, laws of 1862, pages 261–2; 1 Clinton Dig., 445, title "Buffalo," § 2.)

The statute expressly declares such issue unlawful. Did not the county commissioners of Bon Homme county contract to issue "warrants amounting in the aggregate to a sum larger than the county tax levied for the year in which they are issued?" Is not $3,333 larger than $600? Is not the half sum to be paid out of taxes of 1873 larger than $600? And if the issue of such warrants is declared to be unlawful, is not the contract to issue them also unlawful? The court below finds that the issue of the 1874 warrants was unauthorized and sustains the injunction as to these until the levy of 1874. Upon what ground the court sustains the injunction for that time is not clear. There is only one ground under the statute upon which the injunction can be sustained, and that is that the issue of warrants is larger than the county tax; and upon that ground why. should not the issue of warrants upon 1873 taxes be restrained equally .with those upon the taxes of 1874? It is clear that the "aggregate" sum referred to in the statute of $3,333 is larger than the county tax of 1873, and it- is equally clear that the half sum of $1,666.50 is also greater than the county tax of that year, and exceeds it by $1,066.50.

The court seems to have held the issue of the 1874 warrants unauthorized, because they were to issue before the levy of the tax of 1874; and in the fourth (4th) conclusion of law the Court says that the issue of these warrants " is.unauthorized

until the arrival of the time for the levy of the tax to be made."
Unless the court took this view of the statute, why should it
restrain the issue of the warrants until the levy of the tax and
no longer? Plaintiffs contend this is not the proper construc-
tion of this statute, but that if the county commissioners can
contract any indebtedness greater than can be provided for
by the annual tax they can issue warrants for such indebted-
ness; that if they can contract an indebtedness to be paid in
1876, they can issue warrants payable in 1876; that if the
statute of 1862 admits of this narrow construction, that no
warrants can issue in excess of the tax of that particular year
in which the warrant is issued, then it follows that if the tax
of any particular year amounted to $1,500, and there was a
surplus of $1,000 in the treasury, yet it could not be drawn
out because the law says you cannot issue warrants to an
amount exceeding the county tax of that year; and though
you have a surplus of $1,000 in the treasury you cannot reach
it because your issue of warrants would exceed the tax levy
of that year. Plainly no such construction can be given, but
it means: the warrants upon that particular tax levy shall
not exceed the levy, and taken in connection with the other
statutes cited requires the county commissioners to submit
such subjects of expenditures to the legal voters of the county.
This injunction, then, should have been continued, not be-
cause the whole amount $3,333 exceeded the tax levy of 1873,
but the whole issue should have been restrained because the
amount of $1,666.50 to be paid each year exceeded the actual
levy of 1873, and the amount that could be levied in 1874.

But if the narrow view of this statute taken by the defend-
ants and which the court below seems to have followed, be·
the correct one, the result at which the court arrives in re-
gard to plaintiffs' claim is incorrect, for if the issue of
warrants is to be controlled by the levy of *the year* in
which they are issued, then clearly the county commis-
sioners of Bon Homme could issue for county purposes
but $600 in the year 1873, while the proof is they con-
tracted to issue $3,333; so that under either construction
the commissioners contracted to do what the court below

says they were unauthorized to do. If they contracted to do what they were unauthorized to do, was it not an illegal contract? Could English and Calhoun maintain specific performance of this contract? Suppose English and Calhoun had brought suit against the county commissioners to compel specific performance of this contract it will hardly be contended that the court could compel the defendants in such suit to issue warrants in contravention of an express statute, and yet it does not require so strong a showing on the part of the tax payer or person not directly a party to the illegal contract to avoid it, as it does on the part of him who, a party thereto, seeks to take advantage of such illegality in a suit upon such contract. (Fry, Specific Performance, 223, [153,] § 324, §§ 325, 326, 327, 328, and N. 2, 3.) If then the contract was unauthorized, which has been found by the court below, what was the proper course to be taken? There is but one remedy known to the courts, either to sustain or avoid the contract made by the parties. Neither courts of law or equity make contracts for parties. Judge Cole, in *Heath v. Van Cott*, 9 Wis., 516, says: "It is admitted by all that it is the duty of courts simply to enforce contracts precisely as the parties have made them, instead of making new contracts for them to meet the emergencies of a particular case, or to avoid some supposed inconvenience or hardship arising from the natural import of the written engagement." And this is the doctrine of all the cases. Therefore when the court reached the conclusion that the contract was in part illegal, it should have held it was wholly illegal, for the contract was an entire one and not susceptible of division; and if part of the consideration was illegal, it was all illegal, and the prayer of complainant should have been granted. (*Benski v. Paige*, 36 N. Y., 537; *Bigelow v. Law*, 5 Abb., 455; *Otis v. Hamson*, 36 Barb., 210; *Brady v. Mayor, etc.*, 20, N. Y., 312; *Wright v. Weeks, et al.*, 25 N. Y., 153; *Thayer v. Rock*, 13 Wind., 53; *Mackie v. Cains*, 5 Cow., 547; *Burt v. Place*, 5 Cow., 431.) Instead of which the court in effect said the contract you have made is illegal, but you might have made a legal one by contracting to issue the warrants after the levy of 1874; and as you are before me and

the contractors ask to have it done, I will so change the contract, and order the county commissioners to issue these warrants in accordance with the new agreement I have made for you. Suppose the county commissioners had refused to obey this decree, could it have been enforced? And if it could not be enforced it was clearly an improper decree to enter upon the findings of the court below.

The injunction then should have been made perpetual and the relief asked for by plaintiffs should have been granted, and the decree appealed from should be reversed.

*Moody & Cramer*, for appellees.

The findings of fact by the judge is equivalent to the verdict of a jury, and unless manifestly against the weight of evidence, will not be disturbed.

The conclusions of fact arrived at are not only against the weight of evidence, but clearly sustained by the evidence, to-wit: that the expenditure contemplated could be paid out of the ordinary revenue without necessitating the borrowing of any money, or the raising of any special tax.

The submission of a question to a vote of the people is only necessary when a special tax is proposed to be levied in addition to that authorized by the revenue law, and such is evidently the meaning of the statute. (§§ 18, 19, 20, 21, chap. 4, laws of 1868–9, pages 172–173.) The statute required the providing of a court house and county offices by the county, and this contract and management was very economical, judicious and fortunate for the county, and within the power and authority of the commissioner. (§ 19, chap. 1, laws of 1867–8 page 6; § 27, chap. 4, laws of 1868–9, page 174.) The plaintiffs have no cause to complain of the decree. It was more favorable than they had a right to demand, and prevented the issuing of the warrants until the tax was levied to cover them. Thus the provisions of the law were strictly and technically complied with. Certainly no one can pretend but what it was the duty of the commissioners to provide a court house such as was suitable and proper (and there is no pretense that this was an extravagant outlay) and, if necessary,

to incur an indebtedness for the purposes.    The only objection that could be argued is, that by statute, warrants should not be issued faster than the tax is levied to provide for them, and that objection is wholly removed by the order the court below made.

BARNES, J.    This action is brought by the plaintiffs, residents and tax-payers of Bon Homme county, against the defendants, Bangs, Zitka and Donley, as county commissioners of Bon Homme county, George J. Rounds, treasurer of said county, A. M. English and H. H. Calhoun, as contracting parties for the building of a court house for Bon Homme county, and W. A. Burleigh and A. J. Faulk, persons having purchased and holding county orders, issued to English and Calhoun, in payment on said court house contract, and by them transferred to defendants Burleigh and Faulk.

The plaintiffs ask that a certain contract, made between the commissioners on the part of the county, and English and Calhoun, the contractors for the building of the court house, be set aside, annulled and declared void, that the county warrants issued in pursuance of that contract, and in the hands of Burleigh and Faulk, be returned and cancelled, the same having been issued without authority of law, and that the treasurer, Rounds, be perpetually enjoined from paying warrants issued in payment for building the court house.

The court below refused the demands of the plaintiffs, and judgment was entered for the defendants.  From that judgment the plaintiffs appeal.

The first question to be considered is this:   Under what circumstances will a court of chancery interfere by injunction to restrain the acts of a corporation, or the acts of an administrative officer or board?

An injunction will not be granted to restrain the doing of an act which is unlawful and irregular, unless substantial and positive injury will result from a refusal to grant the writ. (High on injunction, § 9.)   An injunction will never be granted when it will be productive of hardship, oppression or injustice, or public or private mischief.   (9 Wisconsin, 166.)

Wood, et al vs. Bangs, et al.

The court of equity will not interfere or restrain the execution of a deed for land sold for taxes, on the ground that the tax proceedings were irregular or void, unless it further appears that the tax proceedings are inequitable, and that it would be against equity and good conscience to refuse the writ.    See U. S. Digest, § 6, vol. 1, new series, and cases there cited, 14 Wis. 618.    See also, *Pettibone v. The Milwaukee & LaCrosse R. R. Co.*, 14 Wis., 443.    In the case just cited the court uses this somewhat significant language:    " The inconvenience which would result from an injunction, adds great weight to the reason for refusing it."

The granting or refusing an injunction rests in the sound discretion of the court, and will never be granted when productive of hardship, oppression or public mischief.    Injunctions will not be granted when the benefit secured by it to one party is of but little importance, while it will operate oppressively, and to the great annoyance and injury of the other party, unless the wrong complained of is so wanton and unprovoked in its character as properly to deprive the wrong doer of the benefit of any consideration as to its injurious consequence.    (20 New Jersey, 1869, page 530.)

An injunction will not be granted when the injury complained of is slight compared to the inconvenience to the defendant and the public that would result from the granting the injunction.    (20 New Jersey, 435.)    But perhaps the strongest case bearing on this question is that of *Kneeland v. The City of Milwaukee*, 15 Wisconsin, 414.    The legislature of Wisconsin passed a law allowing the railroad corporations to pay a certain per centage upon their earnings each year to the state treasurer, in lieu of all taxes, state, county and municipal.    This mode of taxation had been followed for a number of years, when the present case was before the court.    The court declared the act of the legislature void, as being in conflict with the provision of the state constitution which provides that taxation shall be equal, and both the Chief Justice and Justice Paine, in unmistakable language declare that, whatever the consequence of their decision may be, they being satisfied that the law referred to was in violation of the pro-

visions of the constitution, they must and will so declare it. It was soon discovered that that decision would unsettle and make void a large proportion of the assessments and collection of taxes in the state for several years past; that the confusion, embarassment and litigation that would flow from it would be disastrous. They therefore ordered a re-argument of the case, and while adhering to their former expressed opinion that the law was unconstitutional, yet, in view of the disastrous consequences that must follow their decision, they reverse that decision, and thus allow the wrongful, unequal and inequitable tax to be collected, and this, too, solely upon the ground that granting the plaintiff that which the court says he was equitably entitled to, would work a great hardship to the public generally.

I will now consider the facts in this case, and for the purpose of this argument, and that only, will assume that the county commissioners exceeded their authority, and will also assume for the purpose of this argument, that the plaintiffs, as tax payers, unitedly have a right to maintain this action.

From the facts disclosed in this case, it appears that by an act of the Legislature of the Territory, two terms of the district court are required to be held in Bon Homme County each year. It further appears that the county has no court house nor place for holding court or transacting county business, nor is there any place at the county seat that can be procured by the county for that purpose. The law makes it the duty of the commissioners to provide a place for holding court, and the transaction of other county business. The law also authorizes them to make contracts for the erection of county buildings, and also to make contracts for the repair of the same, whenever necessary. From these facts it clearly appears that there was a pressing, if not an imperative necessity for action on the part of the county commissioners.

Recognizing this necessity, they assemble at their usual and accustomed place of meeting, they cause public notice to be given that proposals will be received for the building of a court house. Proposals are submitted to them, are duly examined by them, and the fact disclosed that the defendants,

English and Calhoun, are the lowest responsible bidders, and to them is awarded the contract for building the court house. The plaintiffs, it appears, or some of them, are present at these meetings, and enter their objection or protest against the action of the board. Now, we will not stop to inquire whether these plaintiffs feeling aggrieved by the action of the commissioners, should not have appealed from that decision, and whether that was not the proper and only remedy. But we examine the action of the commissioners for the purpose of noting the fact that they appear to have acted in perfect good faith—an important consideration in an equity proceeding.

It further appears that the contract was made with the defendants, English and Calhoun, to build the court house, for the sum of three thousand, three hundred and thirty-three dollars. That that sum was to be paid in county warrants. It also appears conclusively that it was worth in cash to build the court house the sum which the defendants English and Calhoun received, or were to receive in warrants, and it appears with equal clearness that these warrants were in part worth not to exceed fifty cents on the dollar. I think, too, it also appears from the evidence that the defendants Burleigh and Faulk, being solicitous for this improvement, purchased these county warrants of English and Calhoun, and paid their face or par value. Be this as it may, the fact nevertheless appears that Bon Homme county have their court house at about one half its value, when we reduce the warrants, in which payments for the improvement have been made, to a cash basis. From the statement it will be at once seen that the building of the court house has not depreciated the value of county warrants. It should now be observed that the defendants, the commissioners, in contemplation of law, represent all the residents, the tax payers and free holders of their county; that they thus represent the plaintiffs, who, being tax payers have no interest that is not an interest in common with all tax payers.

Assuming, therefore, that the commissioners exceeded their authority in entering into a contract in the precise terms of

this contract, or assuming even that this contract is void, the question of the building of the court house not having been submitted to a vote of the electors, the fact is nevertheless clear that the commissioners have so discharged their duty that the tax payers of the county have secured the building of a court house, absolutely and indispensibly necessary for the county, and on terms exceedingly advantageous to the tax payers, the plaintiffs included.

I thus reach the conclusion that the plaintiffs suffer no loss, present or prospective, by refusing the injunction asked for. That on the contrary, it is clear the defendants would suffer irreparable loss and injury by setting aside and declaring void the contract for the building of the court house, and granting the injunction asked for.

But another, and equally important question is this: Can persons having no interest except that which is common to all the tax payers, maintain a suit in equity to set aside the acts of town or county officials? A leading case, and one that seems to me to be decisive of this question, is the case of *Doolittle v. The Supervisors of Broome County*, 18 N. Y., 155. The opinion is by Justice Denio. The object of this suit was to obtain a judgment declaring null and void a certain act of the board of supervisors of Broome county, by which that board divided the former town of Chenango into three towns, to be called respectively Chenango, Binghampton and Port Craine. The plaintiffs, seventeen in number, representing themselves to be, and to have been for more than four months, residents and free holders of that part of the town of Chenango, which, by the act of the board of supervisors, was sought to be erected into a separate town, by the name of Port Craine. They state that they commence the action on behalf of themselves and all other persons who have an interest with themselves in restraining the organization of the new towns. The court say: " The first question is this: Has the plaintiffs such an interest as will enable them to maintain this action? This raises a question of much importance, which if it be now doubtful, ought to be definitely settled. It is not pretended that the plaintiffs have any interest which is not in common

with all resident free holders of the proposed new town of Port Craine. The grievance is that they are all threatened to be subjected for the·purposes of local administration to a jurisdiction not created according to law. This will affect not only the other free holders besides the plaintiffs, but all the inhabitants of that local district, whether they are free holders or not. Assuming that the proceedings under which the new towns are proposed to be organized, were void, as claimed by the plaintiffs, no private interest of the plaintiffs' has been invaded, and no injury peculiar to them is threatened." The court further say: "The acts of the supervisors have no bearing on the plaintiffs' individual interest. Whatever concerns they have in the question belongs to them only as citizens, and members of the community. If this action can be sustained, then any tax paying citizen may compel the public authorities to litigate in the courts the acts of any administrative board or officer in the state, and thus proceedings of this kind can only be perfected by the judgment of the court of final appeal. Every person may legally question the constitutional validity of any act of the legislature which· affects his private rights, but if a citizen may maintain an action for such a purpose, in respect to his rights as a voter and tax payer, the courts may regularly be called upon to revise all laws that may be passed. They may at the instance of any tax payer be required to enjoin the comptroller from drawing warrants on the treasurer, and that officer from paying them, in every case where it may be conceived that the law authorizing the expenditure was passed without constitutional authority. The state tax of 1855 was lately impeached upon plausible grounds as having been unconstitutionally enacted. This was done by a direct proceeding by the attorney general against the board of supervisors. But upon the plaintiffs position in this case, the state and county officers might be compelled to litigate the question of constitutionality with every tax payer, and thus the fiscal business of the state would be transacted mainly in the courts. The law, in my judgment, does not afford such an opportunity for excessive litigation."

No private person or number of persons can assume to be

the champions of the community, and in its behalf challenge the public officers to meet them in the courts of justice to defend their official acts.    In the case of *Hale v. Cushman*, 6 Metc , 425, a town in Massachusetts had passed a vote to pay certain expenses, which the plaintiffs who were legal voters, and who together were liable to pay more than one half of all the taxes to be assessed on the inhabitants of the town, claimed to be illegal.    They filed a bill to enjoin the payment.    The bill was dismissed upon the ground above recognized.    This, too, is an elementary principle.    Blackstone says: "It would be unreasonable to multiply suits by giving to each man a separate right of action for what damnifies him in common only with the rest of his fellow citizens."    (Book 4, 167.    See also 16 Howard, term reports, 512 and 137; 19 How., 525, and 35 How., 82; 27 N. Y., 348.    This case refers to the decision in 18 N. Y., 157, and expressly approves the same.

In *Newcomb v. Horton*, 18 Wisconsin, 566, the plaintiff sues in behalf of himself and other tax payers of a school district to prevent the collection of a tax to pay a certain judgment fraudulently obtained, and to cancel the judgment.    The first objection is in substance that the respondent could not bring this action in his own behalf, and on behalf of several tax payers of the school district.    That there is no common right or common interest of those persons in the property affected by the tax.    That the tax is upon and against the individual property of each tax payer, and that if there is any injury, it is an injury to the property and rights of each tax payer alone, and not an injury affecting a common right or interest, and this objection must prevail.

There is no general or common interest affected by the assessment tax in this case.    The property is owned in severalty, and each tax payer may sue alone and obtain a complete relief, so far as his rights and property are concerned.    There is no necessity for one tax payer to unite another with him in a suit for this purpose.    It is true, selling land for an illegal or void tax would be injurious to all persons whose property was sold.    But this does not prove that one tax payer may bring this suit for himself and others.    Their rights and inter-

ests are entirely distinct, and one tax payer may obtain complete relief without making another a party. From a careful examination of all the cases I have been able to find, I am satisfied that the doctrine enunciated in the above cases is sound and may be safely followed.

It occurs to me that in holding to the contrary (holding that two or more tax payers may unite in one action) is to assume that because the same state of facts exist, as touching each of the tax payers, and because the same defense may be interposed in each case, that that constitutes a united and joint interest. That cannot be true. But to authorize two or more tax payers to unite in the same action, it must appear that the lien if created, or the tax if collected, would be collected from property owned in common.

There is still another consideration not to be lost sight of, which I will only allude to, namely: that generally a party that comes into court asking for equitable relief must first restore that which he has received from the defendants. It may be said that these plaintiffs have received nothing from the defendants. That answer will not suffice. The tax payer has, in fact, received the labor, material and money of the defendants English and Calhoun, and if these plaintiffs now represent the tax payers of Bon Homme county, and as such, seek to set aside and avoid the contract under which English and Calhoun performed valuable services and expended their money, then these tax payers must do that which is equitable.

I come now to the consideration of the only remaining question which I regard as important in this case. Section 27, chapter 4, laws of 1869, gives the county commissioners authority and power to erect and repair court houses, jails and other county buildings, and expressly authorizes them to make contracts for that purpose. Section 31· of the same chapter authorizes an appeal from the decision of the commissioners upon all matters properly before them, by any person aggrieved, to the District Court of the county. Section 34 provides, that all appeals taken from the decision of the commissioners shall be docketed as other causes pending therein, and the same shall be heard and determined *de novo*.

Section 35 provides that the District Court shall render final judgment, and cause the same to be executed, or the District Court may send the same back to the commissioners with an order how to proceed, and require the board to comply with the order by mandamus or otherwise. Here, then, is a plain, simple, sensible, cheap and adequate remedy given by statutes to all persons aggrieved by the action and decisions of the board of commissioners.

The record in this case discloses the fact that the plaintiffs well knew of the action of the commissioners; they were, in fact, present and protested, as appears of record, against the action and determination of the board. If they were dissatisfied it was their duty to have pursued the remedy given by statutes. Here is a plain statute empowering the commissioners to build a court house, and the same statutes gives all parties aggrieved by the decision of the commissioners, the right of appeal. It seems hardly necessary to cite authorities in support of this position, that where a statute confers upon public officials authority to do one act, and then the same statute points out the remedy secured or given to all parties aggrieved, that the aggrieved party must pursue his legal or statutory remedy, and that such aggrieved party has no standing in a court of equity. See 15 Wallace, 227. This is the language of the Court.

It has been insisted by the counsel for the appellants that there is a complete remedy at law, and that the bill must, therefore, be dismissed. Such must be the consequence if the objection is well taken.

In the jurisprudence of the United States this objection is regarded as jurisdictional and may be enforced by the court though not raised by the pleadings nor suggested by the counsel. See also 2 Black, 551, and 15 Wallace, 373, and cases there cited.

We are, therefore, unanimously of the opinion that so much of the preliminary injunction as remains in force, should be dissolved, and that this action be dismissed.

It is accordingly ordered, adjudged and decreed that said

injunction be dissolved, and the action dismissed, at the proper costs of the appellants; and the court below is directed to take such further proceedings in the premises as may be required by law.