[File No. 7096]

STANLEY CHESTER, Ethel Chester, H. A. Thexton, Mary Thexton Serumgard, Ralph Holler, John Prigge, and Bennie Swanson, of themselves and for some twenty (20) others, who like themselves, are landowners affected by the proposed "Number 50 Walsh—Pembina County Drain", and the assessments proposed to be collected for the construction of the same, Appellants, v. F. M. EINARSON, C. R. Morrison, and James A. Sharp, as the Board of Drain Commissioners of Pembina County, and George Berntson, Carl Rinde, and Irwin Schumacher, as the Board of Drain Commissioners of Walsh County, their successors, if any, comprising and constituting said Boards; the said Boards, and the members thereof acting jointly on matters connected with or relating to what they have designated as, "Number 50, Walsh—Pembina County Drain", Respondents.

(34 NW2d 418) and (35 NW2d 137)

Opinion filed October 27, 1948. Rehearing denied Dec. 6, 1948.

Opinion of the Court by *Gronna,* Dist. J.

*Day, Lundberg & Stokes* and *R. H. McEnroe,* for appellants.

*W. T. DePuy,* for respondents.

GRONNA, District J. This is an action to enjoin the Boards of Drain Commissioners of Walsh and Pembina Counties, respectively, acting as a joint board, from constructing proposed Drain No. 50 for the drainage of certain farm land in said counties, and from spreading assessments therefor. The district court of Walsh County denied the injunction. Now, upon appeal from

the judgment herein dated October 8, 1947, the case is here for trial de novo.

Under the laws of North Dakota the board of county commissioners of any county is authorized to appoint three freeholders of the county as a board of drain commissioners of such county. RC 1943, Sec. 61–2103. Proceedings for the establishment and construction of drains must be had before such board of drain commissioners. The laws relating to the proceedings for the establishment and construction of drains provide:

"A written petition for the construction of a drain may be made to the board. Such petition shall designate the starting point, terminus, and general course of the proposed drain. If among the leading purposes of the proposed drain are benefits to the health, convenience, or welfare of the people of any city or village, the petition shall be signed by a sufficient number of the citizens of such city or village to satisfy the board that there is a public demand for such drain. The petition shall be signed by at least six freeholders whose property will be affected by the proposed drain." RC 1943, Sec. 61–2110.

"Upon the presentation of a petition as provided in section 61–2110, the board, as soon as practicable, shall proceed to examine the line of the proposed drain, and if in its opinion it is necessary for the public good, it shall adopt a resolution to that effect and also shall adopt a resolution designating a competent surveyor who shall survey the line thereof and establish the commencement and terminus and determine the route, width, length, and depth thereof." RC 1943, Sec. 61–2111.

"Upon the filing of the surveyor's report provided for in Section 61–2113, the board shall fix a date and public place for hearing objections to the petition. Such place for hearing shall be in the vicinity of the proposed drain and shall be convenient and accessible for the majority of the landowners affected by such drain. At least ten days' notice of such hearing shall be given by causing a notice to be published at least once in the official newspaper of the county in which such proposed drain is located. In addition, a notice shall be sent by registered mail to the post office address, as shown by the records of the Register of Deeds or County Treasurer of the county, of each owner of

land which may be affected by the proposed. drain. Notices of such hearing shall contain a copy of the petition and a statement of the date of filing of the surveyor's report and the date when the board will act upon the petition, and shall be signed by the members of the board or a majority thereof. . All persons whose land may be affected by any such drain may appear before the board and may express fully their opinions and offer evidence upon the matters pertaining thereto." RC 1943, Sec. 61–2114, as amended S.L. 1945, c. 327, s. 1.

"If a majority of the landowners whose land is subject to assessment for the construction of the proposed drain petition the board to have further proceedings discontinued, the board, by resolution, shall order further proceedings discontinued." RC 1943, Sec. 61–2115.

"If, upon the examination by the board before the survey has been made, if upon the hearing upon the petition or upon the trial in the district court, it shall appear that there was not sufficient cause for making such petition, or that the proposed drain would cost more than the amount of the benefits to be derived therefrom, the board shall deny the petition. The petitioners shall be liable jointly and severally, to such board for all costs and expenses incurred in the proceedings, to be recovered by such board by action. If it shall appear that there was sufficient cause for the making of such petition and that the proposed drain will not cost more than the amount of the benefits to be derived therefrom, the board thereupon shall make an order establishing the drain, accurately describing it, and giving the same a name under which it shall be recorded and indexed." RC 1943, Sec. 61–2116.

"Any person whose land is assessed or may be assessed for the construction of a drain under the provisions of this chapter may appeal to the district court from the order of the board establishing the drain. Such appeal shall be taken and perfected within thirty days after the order establishing the drain is filed. . . . The judge shall hear such appeal not less than ten days nor more than thirty days after the filing of such appeal with the clerk, the day of hearing to be fixed by the court. The case shall be tried in all respects as a court case without a jury and

costs shall be allowed and taxed as costs are taxed in said courts in civil actions and upon like notice. Where such appeal is perfected, the district court upon the hearing may try and determine the question as to whether, in the first instance, there was sufficient cause for making the petition for the establishment of the drain, and whether the proposed drain will cost more than the amount of the benefits to be derived therefrom." RC 1943, Sec. 61–2117.

Because of the fact that the area to be drained included parts of both Pembia and Walsh Counties, petitions for the establishment of a drain were filed with the drain board of each county, asking for the establishment of what was to be later designated as Drain 50. The petitions were filed in June 1944. They were in all respects in accordance with the provisions of RC 1943, Sec. 61–2110.

On July 17, 1944, the two boards met jointly to consider the petitions. All proceedings had in connection with the establishment of the drain in question were subsequently conducted by the boards acting jointly, although the two boards were not formally organized as a joint board until December 4, 1945.

Meanwhile the boards conferred many times with Mr. John Dillon, district conservationist of the Soil Conservation Service of the U. S. Department of Agriculture. Also, the boards, in conjunction with Mr. Dillon, held meetings to view the route of the proposed drain and to discuss the various problems involved with the persons who would be directly affected by the construction of the drain. Thus, the boards satisfied the requirements of RC 1943, Sec. 61–2111.

Under the direction of Mr. Dillon the Soil Conservation Service made a preliminary survey and filed a report thereof with the county auditors of Walsh and Pembina Counties, respectively. Those surveys were in the possession of the boards at their meeting on December 4, 1945, at which time the formal organization of the two boards into one joint board was completed and Mr. W. W. Felson was appointed the clerk thereof. At this meeting the board fixed January 8, 1946, at Drayton, North Dakota, as the time and place for hearing objections to the petitions for the establishment of the drain. This is set

forth in the detailed minutes of such meeting. The minutes also contain the resolution of the board describing the property which probably would be benefited or affected by the proposed drain.

At such hearing on January 8, a majority of the landowners whose land was subject to assessment for the construction of the proposed drain, petitioned such board to have further proceedings discontinued. Such petition, which we shall hereafter refer to as a remonstrance, was made and presented in accordance with the provisions of RC 1943, Sec. 61–2115. Instead of ordering further proceedings discontinued, the hearing was continued until 2:00 P.M. on March 5, without objection, so that the board could apply to the State Water Conservation Commission for financial assistance toward payment of the cost of construction of the drain. The minutes for January 8 read in part:

"Several petitions were filed objecting to the establishment of said drain. Large delegations of landowners in area affected were present and were urged to fully express themselves relative to the matter under consideration. State fully their reasons for or against the construction of such a drain.

"Mr. John Dillon, Soil Conservation Engineer was present and gave an outline of the proposed drain, width, length, depth and why the construction of a drain of such size was necessary to care for and properly drain the lands within the area.

"There was much discussion as to there being sufficient cause for petitioning for drain and that the proposed drain would cost more than the amount of benefits to be derived therefrom if the full cost thereof was to be paid by the landowners within area. The question arose as to what portion of the cost might be paid from state funds. What contributions might be made toward the cost of construction from sources other than assessments by landowners.

"After examining the petitions protesting against establishment of said drain, listening to the landowners present, joint board of Drain Commissioners from Walsh and Pembina Counties concluded not to take final action or make its order for or against establishing drain until a later date and that in the

meantime State Water Conservation Commission be contacted and it be determined from said Commission what sum, if any, could be allowed or allocated from state funds toward construction of said drain.

"Be It Resolved that the Board of Drain Commissioners of Walsh County and Pembina that they do hereby continue the hearing on the petition to establish hereinbefore mentioned drain, known as Drain No. 50, in Walsh and Pembina Counties until March 5th, 1946, at two o'clock P. M. at which time said board will meet in the City Hall in the City of Drayton to hear further evidence or testimony for or against the establishing of said drain."

On March 5, 1946, the board reconvened and after a favorable report was made of the promised assistance of the State Water Conservation Commission, a number of objecting landowners came forward and withdrew their names from the remonstrance so that less than a majority remained thereon. The board then tabulated the remaining names and determined that the remonstrance was legally insufficient. Thereupon the board adopted a resolution for an Order establishing Drain No. 50.

On October 15, 1946, the board held a meeting and made an order asssessing benefits against the lands which it found to have been benefited by the proposed drain, and it fixed November 13, 1946 as the time when, and it fixed a place in the vicinity of the proposed drain where, the board would meet and review the assessment of benefits and it caused written notice of the time and place of such meeting to be issued and published and set by registered mail to the landowners whose lands would be affected by the construction of the proposed drain. Some of the landowners affected retained counsel who appeared for them at the hearing held on November 13th and oral and written protests were made that the legal prerequisites for the meeting had not been met for the reasons, among others, that such remonstrances of the majority had been presented to the board on January 8th. The objections presented were overruled by the board. Thereafter on December 26th some of the objectors appealed to the state engineer pursuant to the provisions of RC 1943, Sec. 61–2121 to review, correct and adjust the assessments. The

state engineer rendered his decision on such appeal on August 9, 1947. On January 21, 1947, the plaintiffs instituted this action to enjoin the board from doing any further act in promoting or establishing said Drain No. 50 or spreading any assessments that had been made in connection therewith in the assessment records against the lands of the plaintiffs.

It is alleged in the Complaint that petitions for the establishment of a drain were presented to the boards of Drain Commissioners of Walsh and Pembina Counties on or about June 19, 1944, and that thereafter a joint meeting of the boards was held and a survey of the project authorized. That thereafter a survey and estimate of the cost of the work was submitted to the boards, the estimated cost being some $131,000. On January 8, 1946, a meeting was held to consider the petitions for said drain and that "at said time and place the Plaintiffs and others, constituting a majority of the affected land-owners, filed with the said Boards objections and/or petitions, in writing, objecting to the establishment of the proposed drain and asking that the same be abandoned;

"That instead of abandoning the said drain project as required by law, when the same is objected to by a majority of the affected land-owners, (it being admitted by said Boards that a majority of such land-owners objected as aforesaid) the said Boards became the sponsors and promoters of the said drain project with certain modifications, among which was a proposal to have a part of the cost of said project paid by the State of North Dakota; that a further hearing was had on March 5, 1946, which meeting was had without the publication and other notice required by statute; that at said meeting held March 5, 1946, the Boards purportedly established the aforesaid drain in disregard of the protests of the Plaintiffs as aforesaid;".

It is further alleged that on October 15, 1946, the board had a further meeting and made a purported order assessing the sum of $56,952.62 against the lands allegedly benefited by the proposed drain and that on November 13, 1946, the said Board held a meeting at the city of Drayton, North Dakota, "allegedly for the purpose of hearing objections to said assessments; that the plaintiffs appeared at said purported hear-

ing, in person and/or by counsel and, without waiving their objection to previous proceedings of said Boards, filed written objections and protests to the assessments." That within less than 10 days thereafter the defendants, in disregard of the objections and protests of the plaintiff and in disregard of the provisions of § 61–2124, RC 1943, made a purported letting of the construction of said drain. That "the unlawful and unauthorized acts of the defendants" have resulted in large pecuniary losses to the plaintiffs, and the imposition upon their lands of assessments amounting to many thousands of dollars, the levying of which is wholly void and unlawful, and against which the plaintiffs have no adequate remedy at law.

"That the attitude and conduct of the Defendants in promoting said drain, in failing to have available the public records of their actions, in changing and modifying the drain plan and delaying the entire proceedings over a period of some two (2) years, has operated to mislead and deceive the Plaintiffs and led them to believe that the original proposal had been abandoned; that the repeated public statements by the Board members that they had received objecting petitions from a majority of the affected land-owners confirmed the Plaintiffs in their aforesaid beliefs; that the present attempts of the Defendants to treat their proceedings as a continuing operation is a fraud upon the Plaintiffs, and is designed to deprive them, and does deprive them, of their statutory rights in the matter; that the Plaintiffs have no adequate remedy at law for the assertion and/or protection of their rights in the premises."

In an affidavit of the plaintiffs, Stanley and Ethel Chester, attached to and made a part of the complaint, it is stated that the said Stanley Chester after receiving notice that the proposed drain would include his land he contacted some 30 of his neighbors who signed a petition directed to the said drain boards objecting to the establishment of said drain and requesting that the same be abandoned according to law. That affiant personally filed such objecting petition with the acting clerk of the joint drainage board before the opening of the hearing called to consider the petition for the construction of the drain, and that affiant never withdrew or attempted to with-

draw his name from said objecting petition but that "he has been at all times objecting to the construction of said drain."

In their answer the defendants denied generally the allegations of the complaint except such as were specifically admitted, qualified or explained. They denied, by specific averments, the various allegations in the complaint alleging erroneous or wrongful acts on the part of the defedants. They further alleged "that the plaintiffs and none of them took an appeal from the order establishing said drain in the manner or within the time specified by statute in such case made and provided and that such neglect and failure on the part of the plaintiffs to avail themselves of such statutory remedy and proceedings has deprived them of any right to now invoke the jurisdiction of this Court to restrain the construction of such proposed drain . . . .

"That the plaintiffs have had an adequate remedy at law in all things and in all matters connected with the establishment of said drain but have failed, refused and neglected to invoke the same and by such failure, refusal and neglect have deprived themselves and this Court of jurisdiction in equity or otherwise to hear and determine the issue now in said action attempted to be invoked."

The case came on for trial and was tried to the court, without a jury, on the issues framed by the pleadings. The court made findings of fact and conclusions of law in favor of the defendants and ordered judgment for a dismissal of the action on the merits. Such findings of fact, conclusions of law and order for judgment were signed on June 26, 1947, and judgment was entered thereon on October 8, 1947. The plaintiffs have appealed from the judgment and demanded a trial de novo in this Court.

The grounds for the appeal are epitomized in fourteen specifications of error. However, we are met at the threshhold of the case with the question as to the extent of review of the actions and determinations of the board of drain commissioners to which the plaintiffs are entitled in an action for injunction. We shall, therefore, consider that question before entering upon a consideration of the grounds assigned by the plaintiffs in the specifications for error.

As has been shown the statute relating to drains specifically grants to any person whose land is assessed or may be assessed for the construction of a drain the right of appeal from an order of the board of drain commissioners establishing a drain. RC 1943, § 61–2117. No appeal was taken to the district court from the order dated March 5, 1946, establishing Drain No. 50.

In the court below and in this Court the defendants contend that this statutory provision gave plaintiffs an adequate remedy at law for a review of the order establishing the drain and that consequently an equitable action for injunctive relief does not lie. The principle invoked by defendants' counsel is a fundamental rule of equity jurisprudence. 28 Am Jur, Injunctions, p 232, § 37. It has frequently been recognized and applied by this Court. Continental Hose Company, No. 1 v. Mitchell, 15 ND 144, 105 NW 1108; McIntyre v. State Board of Higher Education, 71 ND 630, 3 NW2d 463; Bismarck Water Supply Company v. Barnes, 30 ND 555, 153 NW 454, LRA1916A, 965; Fish v. France, 71 ND 499, 2 NW2d 537. Where the law provides an appeal from an order or determination of a board or commission whereby the correctness and validity of the order or decision may be reviewed the remedy so provided, if adequate, must be pursued and a party having the right of appeal may not disregard the remedy and obtain injunctive relief against the enforcement of the order or decision. 28 Am Jur, Injunctions, p 242, § 46; 43 CJS p 455; Wood et al. v. Bangs et al., 1 Dakota 179, 46 NW 588; Smith et al. v. Pence and Pier, 33 SD 516, 146 NW 709; Gaertner v. City of Fondulac, et al., 34 Wis 497; Rosso v. Village of Brooklyn Center, 214 Minn 364, 8 NW2d 219; Slezenger v. State of Michigan Liquor Control Commission, 314 Mich 644, 23 NW2d 243; Peoples Investment Company v. Des Moines, 213 Ia 1378, 241 NW 464, 79 ALR 1310. Counsel for the plaintiffs contend, however, that the remedy by appeal was not adequate and that it did not afford the plaintiffs or other landowners affected by the drain an opportunity to obtain a review of the actions and rulings of the board of drain commissioners of which the plaintiffs complain.

Plaintiffs' counsel contend that said § 61–2117, supra, affords only a limited review, that it restricts the review on ap-

peal from an order of the drain commissioners establishing a drain to the questions "whether in the first instance, there was sufficient cause for making the petition for the establishment of the drain and whether the proposed drain will cost more than the benefits to be derived therefrom." We do not agree with this contention. In our opinion the statute places no such limit upon the review on appeal. The statute says: "Any person whose land is assessed or may be assessed for the construction of a drain under the provisions of this chapter may appeal to the district court from the order establishing the drain." There is no intimation in this language that the review on appeal to the district court is restricted and limited to any particular question or questions; and in our opinion the language in the last sentence of the section, upon which plaintiffs' counsel relies, does not evidence any intention to limit the review on appeal to the questions there mentioned. The statute says: "Where such appeal is perfected, the district court upon the hearing *may* try and determine the questions as to whether in the first instance there was sufficient cause for making the petition for the establishment of the drain and whether the proposed drain will cost more than the benefits to be derived therefrom." The verb "may" has a wide scope of meaning. It has various meanings often depending on the context. 39 CJ 1392. The word "may" in a statute may mean "shall" or "must", it may import permission or liberty to act, or it may mean "to have power" to act. See Funk and Wagnall's New Standard Dictionary of the English Language, the Century Dictionary and Encyclopedia, Vol VI, and Webster's New International Dictionary, 2d edition. See, also, People v. DeRenna, 2 NYS2d 694, 700, 701, 166 Misc 582; Ocean Accident and Guarantee Corporation v. Milford Bank, 33 SW2d 312, 313, 236 Ky 457. We think that in the statutory provision under consideration the verb "may" was used in the latter sense and that when the legislature said that upon the hearing of the appeal the district court "may try and determine" the questions stated, it meant that the district court on the hearing of such appeal shall have "power to try and determine" the questions stated. That such was the meaning of the provision as originally enacted can not be doubted. The

provision was first enacted by the legislative assembly in 1915. Laws 1915, Chapter 123. As then acted the provision read: "Upon said appeal being perfected as hereinbefore provided, the district court *shall have authority* upon such hearing to try and determine the question as to whether there was, in the first instance, sufficient cause for making the petition for the establishment of the drain, and whether the proposed drain will cost more than the amount of benefits to be derived therefrom." The provision remained without change until it was embodied in RC 1943, § 61–2117. In the 1943 codification certain changes were made in phraseology. However, " 'the general presumption obtains that the codifiers did not intend to change the law as it formerly existed. Braun v. State, 40 Tex Cr R 236, 49 SW 620, 622; United States v. Ryder, 110 US 729, 740, 4 S Ct 196, 201, 28 L ed 308, 312. Changes made in the revision of statutes by alteration of the phraseology will not be regarded as altering the law unless there is a clear intent so to do. State ex rel. v. Prater, 48 ND 1240, 189 NW 334, 337; State ex rel. Johnson v. Broderick, 75 ND 340, 27 NW2d 849, 864. This presumption is corroborated by the revisers' note to § 61–2117, supra, in the report of the Code Revision Commission to the 28th Session of the Legislative Assembly. In such note it is said: "This section is a part only of SL 1915, c 123, s 1, revised for separate statement and for clarity without change in meaning."

It has at times been held that even though the legislature has enacted a statute that an appeal shall lie from "all decisions" of an administrative board, the legislature may nevertheless have intended that such appeal shall not lie from decisions involving in a large measure questions of policy notwithstanding the general language of the statute. Pierre Waterworks Company v. Hughes County, 5 Dakota 145, 163, 164, 37 NW 733, 739, 740. See, also, In re Drainage District No. 3, 146 Ia 564, 576, 577, 123 NW 1059, 1064. The language used by the legislature in § 61–2117, supra, indicates that the legislature intended to afford landowners affected by the construction of a drain the widest possible review on appeal and we think that the provision that the court on the hearing of such appeal may try and determine the two questions stated probably was inserted to re-

move all doubt as to the legislative intent that when an appeal was taken from an order establishing a drain the review was not to be restricted merely to procedural errors that might have occurred in the proceedings before the board, but that the court was also vested with power to try and determine the two questions which lay at the very foundation of the establishment of the drain. NDRC 1943, § 61–2116. This intention, we think, is evidenced by the language of the statute and it becomes even more clear when we consider the history of the legislation and the state of the law at the time the present legislation relating to appeals was enacted.

In 1883 the legislative assembly of the Territory of Dakota enacted a comprehensive measure providing for the establishment of drains pursuant to petition of landowners whose lands would be affected by or assessed for the expense of construction. Laws, Territory of Dakota, 1883, Chapter 75. The statute authorized the board of county commissioners of any county or the board of supervisors of any organized township to cause drains to be constructed pursuant to the provisions of the act within their respective counties or townships. That act authorized an appeal to the district court from a final order of the board within 30 days after such order had been made. The provisions of that statute were incorporated in the Revised Code of 1887 and constituted sections 2047–2078 of such code. They remained in force without substantial change until they were repealed by the state legislature. In 1893 the legislature enacted a general drainage statute. Chapter 55, Laws 1893. This statute repealed Chapter 75, Laws 1883, and all acts amendatory thereof and made many changes in the former laws relating to drainage. However, this statute was held by this court to be unconstitutional and wholly invalid. See, Martin v. Tyler, 4 ND 278, 60 NW 392, 25 LRA 838. In 1895 the legislature passed another drainage law wherein it obviated the defects in the enactment of 1893 which this Court had held operated to render that law unconstitutional. See Laws 1895, Chapter 51. Aside from changes made to obviate the constitutional objections, the general features of the 1895 enactment were the same as those of the law of 1893. See, Redmon v. Chacey, 7 ND 231, 233, 73 NW 1081, 1082. Said

Chapter 51, Laws 1895, was complete in itself and was clearly intended to cover the entire subject to which it related. It specifically repealed Chapter 75 of the Laws of 1883 "and all acts amendatory thereof and all other acts or parts of acts inconsistent" with said Chapter 51, Laws 1895. The provisions of Chapter 51, Laws 1895, were incorporated in the Revised Codes of 1895 and constituted sections 1444 to 1474 inclusive of that code. Later they were incorporated without substantial change in the Revised Code of 1899 and in the Revised Code of 1905. See RC 1899, §§ 1444–1474, RC 1905, §§ 1818–1850. The 1895 enactment made radical changes in the laws relating to drainage. It abolished the system that had prevailed under former laws to have the board of county commissioners and the board of supervisors of organized townships empowered to act as boards of drain commissioners in their respective counties and townships and provided instead for the appointment by the county commissioners of a board of drain commissioners. Laws 1895, Chapter 51, § 2. The statute, however, made no provision for appeal to the district court from orders of the board of drain commissioners. In 1911 the legislature amended certain sections of the laws relating to drainage. Laws 1911, Chapter 125. The 1911 enactment made no provision for an appeal to the district court from an order of the drain commissioners establishing a drain, but it did provide for appeal to the state engineer from the assessment of benefits made by the board of drain commissioners. Laws 1911, Chapter 125, § 2. This provision has been retained with certain amendments and is now incorporated in RC 1943, § 61–2121. In the 1911 enactment the legislature provided that, "Should two-thirds of the land owners whose land is subject to assessment for the construction of the proposed drain believe that the benefits to be derived are not equal to the expense of the construction, they may petition the board of drain commissioners to have further proceedings discontinued, whereupon the said board shall by resolution order further proceedings discontinued." Laws 1911, Chapter 125, § 1. This provision was amended in 1925 (Laws 1925, c 131, s 1; 1925 Supp § 2464), so as to change the words "two-thirds" to the word "majority" and as so changed the pro-

vision was incorporated without material change in RC 1943, § 61–2115.

A number of drains were constructed under the provisions of Chapter 51, Laws 1895, and the acts amendatory thereof which gave rise to much litigation. In some of the cases the constitutionality of the act was challenged, and the authority of the board of drain commissioners, and the validity of their acts drawn in question. Some of this litigation found its way to this Court and some also found its way to the Supreme Court of the United States. See Erickson v. Cass County, 11 ND 494, 92 NW 841; Turnquist v. Drain Commissioners, 11 ND 514, 92 NW 852, and other cases following; Alstad et al. v. Sim et al., 15 ND 629, 109 NW 66; State ex rel. Dorgan v. Fisk, 15 ND 219, 107 NW 191; Sim et al. v. Rosholt, 16 ND 77, 112 NW 50, 11 LRA NS 372; Hackney v. Elliott, 23 ND 373, 137 NW 433; Edwards et al. v. Cass County et al., 23 ND 555, 137 NW 580; Northern Pacific Railway Co. v. Richland County, 28 ND 172, 148 NW 545, LRA 1915A 129; Ann Cas 1916E 574; Soliah et al. v. Cormack, 17 ND 393, 117 NW 125, affd 222 US 522, 56 L ed 294, 32 S Ct 103. In such litigation the rule was established by the decisions of this Court that "Where the jurisdiction of the board to act is established by the filing of a sufficient petition for the construction of a drain, and proper notice of hearing has been given, courts will not inquire into the correctness of their determination upon questions within their jurisdiction, including the assessment of benefits." Erickson v. Cass County, supra. In the decision in State v. Fisk, supra, it was said:—"There is no provision for an appeal from the decision of such boards and no provision for any further review of their action by any court or body. . . . The statute not having provided for an appeal nor for a review by any other body, court or tribunal, its action is final, unless attacked for fraud."

In 1915 the legislature enacted Chapter 123, Laws 1915, which amended one of the sections of the then existing laws by adding thereto the following provisions: *"Provided,* that any person whose land is assessed or may be assessed for the construction of a drain, under the provisions of this Chapter, shall have the right to appeal to the district court from the order of the Board

of Drain Commissioners establishing the drain. Such appeal shall be taken and perfected within thirty days after the order establishing the drain is filed. The appellant must file with the Clerk of said Court and serve upon any member of said Board of Drain Commissioners a notice of appeal, and give an undertaking to be approved by said Clerk of the District Court in the sum of two hundred fifty dollars for the payment of the costs in the event that the appellant is unsuccessful in the district court. Such undertaking shall run in favor of the county in which the drain is located, and if located in more than one county it shall run in the name of either of the counties in which the drain is located. The judge shall hear said appeal not less than ten or more than thirty days after the filing of said appeal with the clerk, the day of hearing to be fixed by the court. The case shall be tried in all respects as a court case without a jury, and costs shall be allowed and taxed as costs are now taxed in said courts in civil actions and upon like notice. Upon said appeal being perfected as hereinbefore provided, the district court shall have authority upon such hearing to try and determine the question as to whether there was, in the first instance, sufficient cause for making the petition for the establishment of the drain, and whether the proposed drain will cost more than the amount of benefits to be derived therefrom.

"*Provided,* further, that the right of appeal as herein given shall apply to drains already established where the construction of such drain has not already actually commenced, *provided* such appeal is taken and perfected within sixty days after the passage and approval of this Act."

The above quoted provisions have remained in force without substantial change since their enactment in 1915 and are embodied in RC 1943, § 61–2117. As the only new matter added to then existing laws by Chapter 123, Laws 1915, were the above quoted provisions relating to and authorizing an appeal to the district court from an order of the board of drain commissioners establishing a drain, it is apparent that the mischief in the old law sought to be remedied by the 1915 enactment was to make provision for appeal to the district court from an order

of the board of drain commissioners establishing a drain. It is also apparent from the last provision above quoted that the legislature was concerned not only with drains to be established in the future but also was concerned with and wanted to make the remedy by appeal applicable to drains which had already been established but where construction had not commenced. The legislature deemed the matter urgent. It specifically declared, "Whereas, there is no adequate law now in force authorizing an appeal to the district court from an order establishing a drain and, as a consequence, an emergency exists, therefore this Act shall be enforced and take effect from and after its passage and approval." We are all agreed that on an appeal to the district court from an order of a board of drain commissioners establishing a drain the review is not restricted to the questions, "whether in the first instance there was sufficient cause for making the petition for the establishment of the drain and whether the proposed drain will cost more than the benefits to be derived therefrom"; but that such review extends to any and all questions arising upon the actions, rulings and determinations of the board of drain commissioners in the proceedings for the establishment of the drain and which preceded the order establishing the drain. The remedy by appeal was, therefore, available to the defendants. Such remedy was both speedy and adequate. There are no allegations in the complaint that plaintiffs were prevented from availing themselves of such remedy by duress or fraud on the part of the defendants. The plaintiffs claim, however, that certain acts and determinations of the board were without or in excess of jurisdiction, also that they were invalid by reason of fraud. Upon the trial in the district court the parties were afforded full opportunity to adduce and did adduce evidence bearing on the contentions advanced by the plaintiffs. The trial court found that neither want nor excess of jurisdiction had been established and that no fraud had been shown and ordered a dismissal of the action. In deciding the case the trial court expressed the view that when the order establishing the drain was made the remedy by appeal became available to the defendants; but the court nevertheless considered and

weighed the evidence and decided the several questions raised by the specifications on their merits. For reasons which will be more fully stated in our consideration of specifications XII, VII and X, we shall follow the same plan in disposing of the case as did the trial court.

As we have stated appellants make fourteen specifications of error. Only one specification, namely XI, relates to fraud, the remaining thirteen specifications relate to matters affecting jurisdiction or the exercise of jurisdiction.

We shall first consider the second specification which reads: "II. The Court erred in finding the Boards had jurisdiction to give the notice for the January 8, 1946 hearing on Petition to Establish Drain, it being undisputed that the survey and plans required by § 61–2113 had not been made and filed before such notice was given."

RC 1943, § 61–2114, provides in part that: "Upon the filing of the surveyor's report provided for in § 61–2113, the board shall fix a date and public place for hearing objections to the petition. . . .".

Such specification of error is based upon the false premise that the "surveyor's report" was not filed before the December 4, 1945 meeting, at which the time and place for hearing on the petition to establish drain was set for January 8, 1946, at Drayton. Mr. Dillon, the District Conservationist, testified that preliminary surveys were filed with the county auditors of Walsh and Pembina counties, respectively, on January 19, 1945, and that the final surveys were filed on October 15, 1946. So the *preliminary* surveyor's report was filed before December 4, 1945. The fact that the *final* surveyor's report was filed at a later date is immaterial. The appellants did not introduce any testimony in the district court to show that the rights of anyone were prejudiced in any way by the fact that the first or preliminary surveys were not as complete as those which were later filed as the final surveys. The purpose of the statutes (§§ 61–2113 and 61–2114) is to make available to interested persons the nature, extent and cost of the proposed drain. The preliminary report was sufficient to give all of this information. Moreover, no one testified that prior to the hearing date, January 8, he had in-

spected or made inquiry concerning such preliminary survey at the offices where they were filed. Edwards v. Cass County, 23 ND 555, 560, 137 NW 580.

Appellants' specification of error number one reads as follows: "The Court erred in finding registered mail notice of January 8 meeting sufficient and sufficiently served."

Appellants contend that ten of the landowners who were affected by the proposed drain did not receive registered mail notices of the hearing on the petition to establish the drain and that no such notices were mailed to such ten. Appellants contend that the total number of affected landowners is sixty-four.

It will be noted that RC 1943, § 61–2114, as amended by Laws 1945, Chapter 327, provides that upon the filing of the surveyor's report the board shall fix a date and public place for hearing objections to the petition. That "at least ten days' notice of such hearing shall be given by causing a notice to be published at least once in the official newspaper of the county in which such proposed drain is located"; and that "in addition, a notice shall be sent by registered mail to the post office address, as shown by the records of the Register of Deeds or County Treasurer of the county, of each owner of land which may be affected by the proposed drain."

It should be noted the statute does not say that *all* affected landowners shall be served by registered mail. It only provides for such notice to be mailed "to the post office address, as shown by the records of the Register of Deeds or County Treasurer of the county, of each owner of land which may be affected by the proposed drain."

So, the requirements of the statute are met when the officer charged with the duty of giving notice, mails the notice to such record address, in accordance with the provisions of the statute, regardless of whether or not the notice is ever received by the addressee. Cota v. McDermott, 73 ND 459, 16 NW2d 54, 155 ALR 1271; Schott v. Enander, 73 ND 352, 15 NW2d 303. The officer charged with the duty of mailing the notices may rely upon the sources of information prescribed by the statute in

obtaining information as to the address of the landowner. Schott v. Enander, supra; Conoryea v. Bd. of County Com'rs., 161 Minn 193, 201 NW 413.

In the instant case there was substantial compliance in the giving of statutory notice. The requirement of publication was satisfied. And even the appellants concede that all except ten of the affected landowners received the registered mail notice. Of the seven named plaintiffs and appellants herein, the following received registered mail notice, namely, Stanley Chester, Mary Thexton Serumgard, Ralph Holler and Bennie G. Swanson.

Three of the plaintiffs, Ethel Chester, H. A. Thexton and John Prigge, all of Pembina County, complain that they did not get registered mail notice of the hearing on the petition to establish the drain. Ethel Chester testified that she knew of the proceedings to establish the drain. She couldn't attend the hearing, but her husband did. The fact is that she was a joint owner with her husband and her name was not on any of the lists certified to the board clerk. She did not assert any injury by reason of not having received a registered mail notice. She signed a petition objecting to the drain.

Both H. A. Thexton and John Prigge attended the hearing on January 8, and the adjourned hearing on March 5. They, too, signed a remonstrance. Likewise, neither of them claimed any harm or injury by reason of not receiving registered mail notice.

In Walsh County, Helen M. Schumacher, clerk of the Walsh County Drain Board, mailed by registered mail the notices of hearing on petition to establish drain to the affected landowners in Walsh County, and then made a written certificate listing the names and addresses and attached thereto the receipts for registered mail.

In Pembina County the clerk of the joint board, Mr. W. W. Felson, obtained certified lists (dated December 13 & 15, 1945) of the affected landowners in Pembina County, together with the respective postoffice addresses from the county treasurer and register of deeds, respectively, of Pembina County. Mr. Felson testified he sent registered mail notices of hearing in

accordance with the names and addresses contained in such certificates.

Inasmuch as the plaintiffs Ethel Chester, H. A. Thexton and John Prigge signed a remonstrance or objecting petition and Thexton and Prigge appeared at the hearing on January 8, 1946, without objecting to the want of registered mail notice such three persons have waived their right to question the want of such notice. 28 CJS, Drains, § 23, p 300; 17 Am Jur, Drains and Sewers, § 35, p 800.

Likewise, six of the remaining seven landowners (not named parties herein) who allegedly did not receive registered mail notices appeared at the hearing, or signed a remonstrance, or both. And accordingly they too have waived their right to question the want of notice.

Obviously, the purpose of the registered mail notice in addition to the requirement of publication is to give the affected landowner actual notice, if possible, in addition to the constructive notice given by publication. However, as we have explained above, the mailing of the registered notice will suffice and actual notice is not essential in such case.

All ten who allegedly did not receive registered mail notice have been accounted for, except one Clara Thompson, the owner of the NW¼ of 34–159–62. However, it appears from the certificate of date December 13, 1945, of the county treasurer of Pembina County that "Ralph B. Boone, et al, Grafton, North Dakota" is the owner of such land. With respect to the same description, the certificate of date December 15, 1945, of the register of deeds of Pembina County shows that according to his records the names and postoffice addresses of the owners are "Bennie G. Swanson (plaintiff herein) and Ettie O. Swanson, Grafton", which names have been written in in pencil. Also a typewritten name "Melvin Thompson, et al" has been stricken out. It was not until after the order of March 5, 1946, was made that another certificate (of date April 21, 1947,) was obtained (by appellants) from the register of deeds of Pembina County wherein Clara Thompson is mentioned as follows: "NW¼ of 34–159–52 Warranty Deed Oct. 23rd 1945 in Book G5 at page 559, Filed Nov. 1, 1945. Melvin Thompson & Clara Thompson. Note: Ralph

Boone conveyed his interest by the above deed. This property was subsequently conveyed by warranty deed dated March 22, 1946 to Bennie G. Swanson and Ettie Swanson as joint tenants, filed March 25th, 1946, in 'J5' at page 563."

As we have shown above it is sufficient that clerk Felson followed the mandate of the statute by mailing the registered notices to the names and addresses listed in the certificates of the treasurer and register of deeds. In so doing he performed his duty.

Specifications of Error numbers IV, V and VI read as follows:

### ·"IV.

"The Court erred in finding that the Boards were not deprived of jurisdiction by the objectors' Petition filed on January 8, 1946.

### V.

The Court erred in failing to find that on the Hearing on Petition to Establish Drain, the first and only duty of the Boards, on having objectors' Petition filed, was to determine the sufficiency thereof, and, until such determination was made, to hold all proceedings in abeyance.

### VI.

The Court erred in finding that signers of the objectors' Petition could withdraw after January 8, 1946."

The appellants contend that the sufficiency of the remonstrance should have been determined as of the date of the hearing on January 8, when it was first presented to the board. If such contention is correct, then it became the statutory duty of the board by resolution to "order further proceedings discontinued." RC 1943, § 61-2115. On the other hand, if, as the respondents contend, the question of the sufficiency of the remonstrance was properly considered by the board as of the date of the adjourned session of March 5, then the decision of the board was correct in holding that such remonstrance was insufficient as to the number of the signers and therefore insufficient to require the board to order discontinuance of proceedings.

RC 1943, § 61-2115 reads as follows: "If a majority of the

landowners whose land is subject to assessment for the construction of the proposed drain petition the board to have further proceedings discontinued, the board, by resolution, shall order further proceedings discontinued."

This statute does not say that the mere filing of the remonstrance causes the board to lose jurisdiction. It expressly provides that a *resolution* shall be adopted ordering further proceedings discontinued.

The filing of a petition to establish drain, as required by RC 1943, § 61–2110, gives the board jurisdiction. Sim v. Rosholt, 16 ND 77, 112 NW 50, 11 LRA NS 372, cited in 126 ALR 1060; Barnes v. Cass County, supra; Bergen Twp. v. Nelson County, supra; Edwards v. Cass County, supra; Alstad v. Sim, supra.

In Sim v. Rosholt, supra, syllabus 1, it is said: "The jurisdiction of the board of drain commissioners to order such drain is acquired by the filing with the board of a petition as therein required, and after such jurisdiction is thus acquired, and the board has taken action thereunder, it cannot be divested of such jurisdiction by the action of the petitioners in withdrawing their names from the petition."

The rule with respect to this question of the right of signers to withdraw from a petition originating jurisdiction was stated in State ex rel. Verry v. Murray, 65 ND 600, 606, 260 NW 577, as follows: "There is a diversity of holding with respect to the right of signers of such petitions to withdraw their signatures therefrom after the petitions are filed with the board or officer designated by the statute making provision for such petition. The rule with respect to this question is generally that withdrawals are not permitted after the board or officers to whom the petitions are addressed have acquired jurisdiction. The difficulty comes in determining when jurisdiction is acquired. This court has heretofore had occasion to pass upon questions much like that now presented for solution. See Sim v. Rosholt, 16 ND 77, 112 NW 50, 11 LRA (NS) 372; Rosten v. Board of Education, 43 ND 46, 173 NW 461; State ex rel. Knox v. Stevens, 48 ND 47, 183 NW 109; Coghlan v. Cuskelly, 62 ND 275, 244 NW 39. See also in this connection Territory ex rel. Stockard v. Roswell (Territory ex rel. Stockard v. Veal) 16 NM 340, 117 P

846, 35 LRA (NS) 1113; Uhl v. Collins, 217 Cal 1, 17 P(2d) 99, 85 ALR 1370, and note.

As we said in Coghlan v. Cuskelly, supra: "Many cases may be found in the books touching upon the right to add to or withdraw signatures from jurisdictional petitions. These cases arose under a variety of conditions and circumstances. They disclose that there is a marked diversity of holding with respect to the question of the right to withdraw. This is illustrated by the cases cited in note to Sim v. Rosholt, 11 LRA (NS) 372, supra. See also cases cited in notes in 15 Ann Cas 1125; Ann Cas 1916B, 823; 35 LRA (NS) 1113; 50 LRA (NS) 195; LRA1916D, 1102, and LRA1917B, 15. But almost without exception each of these cases turns upon the wording of the particular ordinance, statute, or constitutional provision under which it arises and is of no great value as a precedent except in the consideration of a similar provision."

This court has never determined the related question of the right of signers to withdraw from remonstrances, that is, from objecting petitions.

The remonstrance statute, § 61–2115, does not prescribe a certain time within which a remonstrance may be filed and furthermore, it does not prescribe a certain time within which withdrawals therefrom may be made.

However, construing the remonstrance statute in connection with another section § 61–2114 as amended by Laws of 1945, Chapter 327) of the same chapter on Drainage Projects, we find it provides the answer to our question. Section 61–2114, as amended, provides that upon the filing of the surveyor's report "the board shall fix a date and public place for hearing objections to the petition."

In the case at bar the board did fix January 8, 1946, as the date for hearing objections. Accordingly, remonstrances could be filed and withdrawals from such remonstrances made during such hearing and until the close thereof, but not thereafter. That is to say, withdrawals could be made from the remonstrances until the board had passed upon the sufficiency thereof and until it adopted a resolution ordering a discontinuance of proceedings.

There is considerable difference of opinion between the parties to this action as to the applicability of such rule in the case at bar. This is due to the fact that the hearing was not completed on January 8, and was continued until March 5. The appellants contend that the "deadline" for filing remonstrances was January 8, and that there could be no withdrawals therefrom after that date, and that the mere filing of the remonstrances operated to divest the board of jurisdiction. However, it is our opinion that since the January 8 meeting was continued until March 5, the "deadline" for filing remonstrances was March 5, and withdrawals therefrom could be made as late as March 5.

The appellants regard the adjournment as being without authority of law but in this they are clearly mistaken. A drainage board is a quasi-judicial body. The statutes authorize it to hold hearings. If a hearing is not finished at one session the board has authority to continue said hearing until a later date, as was done in this case. The drainage board "has such powers as are expressly conferred by statute or are necessarily implied in order to effectuate the purposes for which it was created." Walstad v. Dawson, 64 ND 333, 252 NW 64. It is elementary that the right to continue such a hearing is one of such implied powers. State v. Risty, 51 SD 336, 213 NW 952, 958. In that case it was held that inasmuch as the statute expressly made it the duty of the drainage board to conduct a hearing that "there is an implied authority for the board to continue such hearings from day to day until the mandate of the statute . . . has been accomplished"; and that "A meeting of a duly constituted board pursuant to a valid order of adjournment is the continuation of the regular session, and by such adjournment the board retains jurisdiction of the matters on hand."

The situation upon a continuance of a board hearing to a date certain is similar to that upon the adjournment of a trial in court. Obviously the adjourned session of the trial is the same and not a different trial.

We conclude that the hearing on March 5 was merely an adjourned session of the hearing on January 8, so that in effect they are both parts of the same hearing. We further conclude that the board acted within its authority in permitting with-

drawals from the remonstrances at the adjourned session on March 5.

Specification XIII reads as follows: "The Court erred in finding the minutes of the boards reliable evidence of board proceedings."

Here plaintiffs contend that the trial court erred in considering the board's minutes as evidence of board proceedings, for the reason that such minutes were not written while the meeting was in progress.

Upon cross-examination by attorney Lundberg, Mr. Felson, the clerk, testified that he had been present at all of the meetings of the joint drain board and then further testified:

"Q. And kept minutes of the proceedings?

A. I kept my own notations, yes.

Q. The minutes that you have here they are what you might call the amplified minutes which you wrote up later from your pencil notations and from your memory, are they not?

A. I wrote them up right away and had the Board sign them up.

Q. At the meeting?

A. No, I took them home and wrote them on the typewriter, that is true.

Q. Then did you have the Board sign them?

A. Yes, they would read them over and sign them."

Obviously it was proper for the clerk to take notes of what transpired at the meetings and thereafter write the minutes from such notes and submit them to the board for aproval. It is a matter of common knowledge that the formal record of what transpires at a meeting of an administrative or legislative body, or even of a court, is seldom made and completed while the meeting is in progress. Thus, at meetings of governmental commissions, at sessions of the legislature, and upon hearings in trial courts stenographic notes are made, which later are transcribed and authenticated as the official record.

Specifications XII, VII and X read as follows:

## XII.

"The Court erred in accepting Defendants' testimony as to withdrawals, there being only hearsay evidence thereof, and in overruling Plaintiffs' objections to such evidence.

## VII.

"The Court erred in finding that the alleged 'withdrawals', assuming they could be made, were sufficient in form and manner to be effective.

## X.

"The Court erred in finding that the Boards' tabulation of thirty (30) for, and fourteen (14) against was sufficient to support the Boards' action."

The board of drain commissioners has such powers as are conferred upon it by statute and such as are necessarily implied in order to effectuate the purposes for which it was created. Walstad v. Dawson, 64 ND 333, 339, 252 NW 64, 67. When a petition for the construction of a drain has been made to the board and the board has examined "the line of the proposed drain", and decided that the proposed drain is "necessary for the public good" (§ 61–2111); after a survey of the proposed drain has been made, and the surveyor's report has been filed, the board must fix a time and place "for hearing objections to the petition." At such hearing, "all persons whose land may be affected by any such drain may appear before the board and may express fully their opinions and offer evidence upon the matters pertaining thereto" (§ 61–2114); they may petition that further proceedings be discontinued, and "if a majority of the landowners whose land is subject to assessment for the construction of the proposed drain petition the board to have further proceedings discontinued, the board, by resolution, shall order further proceedings discontinued." Section 61–2115, supra. Where such petition is made it is the function, and becomes the duty, of the board, to determine "whether those who sign it are sufficient in number, and are among the class of persons mentioned in the act as alone having the right to sign the same." Fallbrok Irrigation District v. Bradley, 164 US 112, 171–172, 41 L ed 369, 393, 17 S Ct 56. In hearing the parties, receiving

and weighing evidence, and in making determinations, the board exercises powers specifically conferred upon it, i.e. the board performs acts and makes determinations within its jurisdiction. Such determinations are not open to collateral attack, and if not "corrected by some of the modes pointed out by statute they are conclusive whatever errors may have been committed" by the board. Erickson v. Cass County, supra; State v. Fisk, supra; Bergen Twp. v. Nelson County, supra.

The above specifications; XII, VII and X; relate to acts of the board of drain commissioners in hearing the proof and determining the number and qualifications of the persons who petitioned to have further proceedings discontinued. The actions and rulings of the board covered by such specifications all relate to and are based on acts and determinations within the jurisdiction of the board. The acts and rulings challenged by these specifications were all subject to review by appeal to the district court from the order establishing the drain and not having been so challenged they are not subject to attack in this action. Erickson v. Cass County, supra; State v. Fisk, supra; Bergen Twp. v. Nelson County, supra. As has been stated the trial court in a memorandum opinion announcing his decision to counsel for the respective parties expressed this view. Nevertheless upon the trial all evidence offered by the respective parties bearing on the questions to which these specifications relate was admitted, and the trial court weighed the evidence and decided the questions raised by the specifications upon the merits, and against the contention of the plaintiffs. In view of the fact that the plaintiffs charge intentional wrongful conduct by the defendants, and contend that the acts and rulings attacked by these, and certain other specifications, taken together establish at least constructive, if not actual, fraud, we, also, have reviewed and weighed the evidence to ascertain whether in any contingency there is any basis for equitable relief.

In specification XII the appellants have reference to the testimony at the trial as to oral statements of withdrawal from the remonstrance on March 5, 1946. Appellants contend that such statements are hearsay. We do not agree. Such statements are like testimony as to a roll call by one who heard it and do not

constitute hearsay but original evidence. In this respect 20 Am Jur, Evidence, § 457, explains the distinction as follows: "The hearsay rule does not operate, even apart from its exceptions, to render inadmissible every statement repeated by a witness as made by another person. In some instances, the fact that a statement was made, rather than the facts asserted in the statement, is material. The distinction in this respect for the purposes of the hearsay rule is between original evidence and pure hearsay."

In order for signers to withdraw from a remonstrance in a drain proceeding, what degree of formality must be observed? The statute is silent upon this point and we cannot legislate thereon. Suffice it to say, competent evidence of withdrawals was received. Although the findings of fact upon such evidence are of a very general nature, such evidence is carefully analyzed in detail in the trial judge's well-reasoned memorandum opinion wherein he found as a fact that the boards' tabulation of thirty (30) for and fourteen (14) against the establishment of the drain, was sufficient to support the boards' action. Judge Grimson's opinion reads in this respect as follows:

"A study of the plaintiffs' tabulation analysis . . . rather corroborates the finding of the board. Taking the plaintiffs' number of affected landowners as 64 they want to first deduct therefrom the ten who they claim were not served. The Court, however, is satisfied that either sufficient service or estoppel on their part makes them eligible for counting and no deduction for them can be allowed. Then plaintiffs claim that 37 affected landowners petitioned for discontinuance on January 8th, which would leave 27. For the reasons above stated Uggerud and Mattson could not be deducted therefrom, which would leave the balance of 37 for discontinuance and 27 affected landowners still as now asking for discontinuance. However, according to the check marks of exhibit 'C' and testimony of the board members, and according to plaintiffs' same analysis, 17 of the 37 withdrew from the petition for discontinuance. That would leave 20 on the petition for discontinuance while to the 28 never on that petition would be added the 17 who withdrew from it, making 44 remaining as not asking for a discontinuance. In other words

only 20 out of 64, or less than a majority were petitioning for a discontinuance when the petition came up for hearing.

"It is true that plaintiffs in that tabulation claim that there were eleven other objecting affected landowners. Some of these appear to have been by letter or telegram. There is a difference, however, between objecting landowners and landowners petitioning for discontinuance. While the objections of the first class should be taken into consideration they do not necessarily ask for a discontinuance nor need to be considered as petitioning for discontinuance. But even if so considered that would make only 31 as petitioning for discontinuance out of 64 affected landowners, still less than a majority. Then plaintiffs' analysis attempts to deduct two who denied having withdrawn. That is just one of the practical reasons why this feature of the case cannot now be considered. The members of the board at that hearing had all the advantage on a consideration of what constituted withdrawals, the appearance, the demeanor and actions of the various petitioners. Under the circumstances their findings have much more weight than a mere denial now and any change of mind since that time could not be considered under the rule that no change can be made in a petition after action on it by the board.

"Then the plaintiffs' analysis argues that the board's showing of 30 for the drain is not a majority of 64. That, however, is not the question here. The sole question is whether a majority remained on the petition for discontinuance. According to this analysis plaintiffs claim 20 remained but the board's finding was that only 14 remained on said petition. It is only when a majority petition for a discontinuance that the board must abandon all proceedings. It matters not how many of the others were at the meeting. They did not petition for a discontinuance.

"So plaintiffs' own tabulation analysis when stripped of those whom they attempt to eliminate and which the board had a right to count, corroborates the finding of the board.

"Anyhow the finding of the board was that at the time of the consideration of the petition asking discontinuance of the drain less than a majority remained on it. That was within its power

and duties. That finding was made on the evidence then before the board. The presumption of legality of that finding prevails in this action. No change of mind of the petitioners since that time can be considered, nor who may be now, and, at different times have been, opposed in fact."

We have carefully reviewed the evidence, and have reached the conclusion that the trial court's analysis thereof and the results which he reached are correct.

Appellants' specification XIV reads as follows: "The Court erred in accepting 'withdrawals' after evidence had rebutted any presumptions of regularity and shown the Boards' record inaccurate, if not fraudulent." The specification is based upon an erroneous premise, and is in a large part disposed of by what has been said in disposing of specifications XIII, XII, VII and X. The appellants complain of the holding of the trial court to the effect that the presumption that the board's action was legal and regular had not been overcome by clear and convincing evidence to the contrary. In particular, appellants point out that they produced two witnesses at the trial who testified that they had wrongfully been counted in favor of the drain on March 5, 1946. One of these, Torbias Mattson, was originally a petitioner for the establishment of the drain while the other, Andrew French, testified he had conveyed his land prior to the adjourned meeting on March 5, so that he had no right then to be a petitioner against the drain. French was correctly tabulated as having "withdrawn" from the remonstrance. Assuming that Mattson was erroneously tabulated as having withdrawn from the remonstrance, the error is understandable in view of the fact that he was one of the signers of the originating petition. Such an error of judgment on the part of the board constituted neither a fraud nor clear evidence of illegality.

Appellants' specification III reads as follows:

"The Court erred in failing to find that the drain approved and established on March 5, 1946, was an entirely different project from that on which notice was given."

The only variation from the preliminary survey which was before the board on December 4, 1945, was in shortening the ditch through Sec. 36 of the Kittelson farm by 3,000 feet. This

saving was effected when the farm owner consented to the running of the ditch diagonally across Sec. 36. Obviously this variation is beneficial to the affected landowners, regardless of what effect it may have upon the Kittleson farm.

Specification VIII reads as follows:

"The Court erred in failing to give consideration to the findings of the State Engineer as showing irregularity and inequitable conduct on the part of the Boards."

Appellant has reference to the recommendations made to the board in a letter of date, May 12, 1947, from the State Engineer. Such recommendations have no bearing on the issues in this case.

In any event the record shows that on August 9, 1947, the State Engineer in deciding the appeal from the assessments expressly stated that the "reassessments and adjustments made by the joint Drainage Board of Walsh and Pembina Counties on July 15, 1947, are correct, fair, and equitable as between the State of North Dakota, the townships through which said drain is surveyed and the owners of land subject to assessments for benefits by reason of the construction of said proposed Drain, and he hereby confirms and approves of said reassessments and has adjudged the assessments so made to be final in the judgment of the State Engineer."

Specification IX reads as follows:

"The Court erred in failing to recognize that the Boards' letting of bids was in itself ground for injunctive relief."

This specification is predicated upon RC 1943, Sec. 61-2124 which provides that "after completing the percentage assessment as provided in Sec. 61-2122 the board without delay shall divide the line of the proposed drain into convenient divisions for construction, . . ."; that "such board shall give at least ten days' notice of the time when and the place where it will meet parties for the purpose of letting contracts for such construction", and that "at least ten days time shall intervene between hearing upon the review of the assessments and the letting of contracts."

There is no claim that ten days' notice of the time and place when and where the board would meet the parties for the purpose of receiving bids for the construction was not published in the manner and for the length of time prescribed by law. The complaint is that ten days' time had not intervened between the hearing upon the review of the assessment and the time specified in the notice when the board would meet the parties for the purpose of considering bids for the contract for construction. The evidence bearing on this particular question is very meager. It does appear, however, that a number of bids were submitted and that those who appeared and submitted bids for the work were informed that the letting of the contract must await the outcome of any litigation which might be instituted. The question raised by this specification obviously has no bearing on whether the order establishing the drain was valid or invalid. At the time the bids were received and considered there was, as we have held, a valid order establishing the drain. This is not a case where there is no authority to contract at all. (See, Rogers v. City of Omaha, 80 Neb 591, 114 NW 833.) On the contrary, the board of drain commissioners had the power to accept bids for the contract for construction. At most there was a failure to comply strictly with the technical directions of the statute. There is no claim and nothing to show that the requirement of notice in the manner and for the length of time prescribed was not fulfilled. As said, the complaint is that ten days time had not intervened between the hearing upon the review of the assessments and the time specified in the notice when the board would meet parties for the purpose of receiving and considering bids and letting the contract for construction.

"Equity reserves its injunctive process for the protection of property or other rights against actual or threatened injuries of a substantial character which cannot be adequately remedied in a court of law. That is to say, the jurisdiction or power to grant injunctive relief should be exercised only when intervention is essential effectually to protect property or other rights of which chancery will take cognizance against irreparable injuries. . . . The mere assertion that apprehended acts will

inflict irreparable injury is not enough. The complaining party must allege and prove facts from which the court can reasonably infer that such would be the result." 28 Am Jur, Injunctions, Sec 47, pp 242–243.

In this state a taxpayer need not show any special injury to himself different from that sustained by other taxpayers in order to maintain an action in his own behalf and on behalf of all other taxpayers to prevent officers of a municipality from incurring a debt contrary to the prohibition of the constitution or of the statute and unlawfully expending or dissipating the funds or property of the municipality. "He need not show any interest other than that which he has as a taxpayer, or any damage or injury to him other than that which he will suffer as a taxpayer in common with all other taxpayers." Lang v. Cavalier, 59 ND 75, 83, 228 NW 819, 822. But he must show that unless the injunctive relief prayed for is granted, injury will result to the taxpayers of which he is one.

"The proposition is incontestable that a taxpayer has a standing to enjoin unauthorized acts of a municipality where the effect of the act complained of, will probably be to increase his burden of taxation, 'but in order to take advantage of it the taxpayer must show the probability of his burden of taxation being increased.'

"Accordingly it is generally held, unless otherwise provided by statute, that a taxpayer cannot sue to enjoin an illegal or unauthorized act on the part of a municipality unless such act will result in an increase of his taxes or will otherwise result in direct or indirect pecuniary injury to him." McQuillin Municipal Corporations, Vol 6, 2d Edition, Revised, p 957.

"While a taxpayer is entitled to be heard on all questions that presently and directly affect him in his rights as such, and may apply to a court of equity to have the municipality or its officers restrained from transcending their lawful powers or from violating their legal duties in any manner which will injuriously affect him, yet where nothing had been done or is proposed to be done which will create any burden on the taxpayers of the community, the mere fact that the complainant is a taxpayer and that the defendant municipality has done, or proposed to

do, an unauthorized or illegal act confers on him no right to maintain his proceeding." 52 Am Jur, p 15, Sec 21.

There is no allegation in the complaint, and there is no proof, that any injury did result or would result from the action taken by the board with respect to the bids. Indeed, the argument in plaintiffs' brief in support of this specification of error—(specification IX)—rather assumes that there has been no proof to that effect. We quote from plaintiffs' brief:

"We submit that, under the circumstances and under the facts shown, it was error for the Trial Court to dismiss the Temporary Injunction without first being assured by the evidence that Plaintiffs' rights as taxpayers and as affected landowners had not been invaded in defiance of statute."

Obviously the temporary injunction became functus officio when the case was decided on its merits and final judgment entered. There was no application for stay pending appeal.

Appellants' specification of error XI reads as follows:

"The Court erred in finding that the Boards were not guilty of fraud, actual or constructive, in the following instances:

1. In 'promoting' drain and informing landowners that if a majority was opposed, the project would be dropped.

2. Loss, discarding or disregard of objectors' petitions, etc., coming in after January 8th meeting, and at the same time permitting and promoting withdrawals.

3. Counting and showing in Board tabulations as favorable to the drain, persons shown by Board records to be opposed.

4. Evading and avoiding consideration of objectors' petitions and ignoring statutory mandate to discontinue proceedings, while trying to invalidate such Petition by encouraging 'withdrawals'.

5. In disregarding recommendations of the State Engineer to include benefited lands omitted from assessed area and to distribute assessments more equitably.

6. In neglecting and failing to keep a record of its acts and proceedings at the County Seats available for public inspection, as required by law and thereby confusing and misleading interested parties."

The question of fraud is generally one of fact. It is important

to note that no member of the joint board was interested either directly or indirectly in the establishment of the drain and none lived in the drain area.

Before any proceeding to establish the drain was instituted, several meetings were held in the neighborhood of the proposed project. These meetings were attended not only by the board members but also by interested landowners.

Plaintiffs point out that the board issued mimeographed sheets in favor of the establishment of the drain prior to the hearing upon the petition. They assert that no public files of the proceedings were kept; and that the boards deceived the landowners into believing that at the hearing on January 8, the project would be abandoned unless the majority approved; that the objecting landowners relied upon such representation after the January 8 meeting and for this reason did not appeal within thirty days after the decision of the board on March 5; and that the board should be estopped by their fraud from setting up the defense that no appeal was taken.

In Barnes v. Cass County, 59 ND 135, 238 NW 839, it was held that the presumption is that official duty has been regularly performed, and that fraud is not presumed but must be proved.

In our opinion the memorandum opinion of Judge Grimson correctly analyzed the issue of fraud thus:

"But the plaintiffs claim that from all these actions of the board fraud can be presumed. To support that they cite, first, the so-called educational meetings held amongst the farmers involved by the board, and the engineer of the Soil Conservation Commission. The Court does not see how fraud can be inferred from that. Quite the contrary. Such meetings were to acquaint the affected landowners with the project, where and how it would be constructed and the cost thereof. They indicate open and aboveboard actions on the part of the board rather than fraud. Next is cited the claimed omission of sending out registered notices to some of the landowners. The Court believes that the statute was followed in that respect. That all the landowners had constructive notice by publication and most of them actual notice is indicated by their participation in the meetings and proceedings. Then the action of adjourning the January

8th meeting seems to indicate a desire for full investigation of the cost as expressed by the meeting rather than any fraud on the part of the board. Then it is claimed that the way the withdrawals were handled on the 5th of March indicates fraud. . . . All that was necessary was for the boards to be apprised of the desire of a petitioner to withdraw. The presumption is that the boards acted legally in that respect. Finally it is argued that no action was taken after the March meeting until the assessment meeting in the fall of 1946 indicates a desire on the part of the board to put the objectors to sleep, etc. The minutes and the testimony show that the decision of the Board to establish the drain was publicly announced at the March 5th meeting so that all should have been apprised thereof. It may have taken until fall to figure out the assessments. That delay does not indicate any fraud.

"On the other hand that the plaintiffs made no appeal after the March 5th decision indicates that their active opposition may have subsided until they got the assessment notice. Then when they saw the amounts and figured them too high their opposition seems to have revived. Then they hired attorneys. Then they appealed from the order of assessment to the State Engineer as provided by law. Everything indicates that the cost is the objection. That when the state aid was secured that cost did not seem so high, but when it actually was figured out the plaintiffs again became dissatisfied.

"Another item claimed to indicate fraud is the failure of the board to keep a separate office and a claimed inability to get at their files and records. Mr. Felson, Secretary of the joint board, is one of the most efficient county officers in the state. He kept good minutes and seems to have had the files in different envelopes year by year. Everything that was produced at the trial and which seems to fully show the proceedings of the board throughout could have been obtained from Mr. Felson, in due time. Even if there were some irregularities in the keeping of the offices or in the proceedings, that of itself does not indicate fraud and no irregularities appear in the evidence sufficient to upset the proceedings. The court, therefore, cannot find fraud, actual or constructive."

The statutes confer wide powers on the board of drain commissioners. The acts of the defendant commissioners challenged here were performed in the exercise of such powers, and even though they may have erred their determinations will not be disturbed because of such errors. Barnes v. Cass County, supra; Bergen Twp. v. Nelson County, supra. "Errors of judgment do not constitute fraud nor do they constitute grounds for equitable relief." Bergen Twp. v. Nelson County, supra. The law will not "infer fraud or deception from a mistake without other circumstances." Rowles v. State Workmen's Insurance Fund, 141 Pa Super 193, 14 A2d 551. Fraud will not be presumed. On the contrary "the presumption is against the existence of fraud"; it "must be affirmatively proved by one who relies on it either for the purpose of attack or defense." 37 CJS pp 393, 400; 31 CJS p 747. In this case no fraud has been shown.

The judgment of the district court is affirmed.

CHRISTIANSON, C. J., NUESSLE and BURKE, JJ., and THOM, Dist. J., concur.

BURR and MORRIS, JJ., did not participate.

GRONNA, Dist. J. (on petition for rehearing). Plaintiffs have petitioned for a rehearing. The principal contention advanced in the petition is that this Court erred in its former opinion in holding that persons who have signed a remonstrance or petition that further proceedings on a petition for the construction of a drain be discontinued may withdraw their names from such remonstrance or petition at any time during the hearing had pursuant to the provisions of RC 1943, Sec. 61–2115. It is asserted that in considering and determining this question this Court overlooked the difference between a petition for the establishment of a drain and a remonstrance or petition to discontinue further proceedings. It is contended that those who remonstrate against the construction of a drain and petition that further proceedings be discontinued may in no event withdraw their names from such re-

monstrance or petition after the same has been filed. In support of this contention plaintiffs cite 19 CJ 654, Sec 81; 28 CJS 302; 17 Am Jur 805; and Noel v. Van Fleit et al., 205 Ind 657, 187 NE 832, and quote the following statement appearing in 28 CJS at page 303:

"Parties may withdraw their names from a remonstrance but such withdrawal cannot be made after the expiration of the period fixed by statute for filing the remonstrance, no matter how long the delay before the hearing is had, and the court has no authority to extend the time."

This statement is based wholly upon certain decisions rendered by the Supreme Court of Indiana. See, 28 CJS p 303, notes 68, 69, and 70.

Under the statutes of Indiana proceedings for the establishment of a drain must be had in the circuit court or superior court of the county in which the lands of the petitioner or petitioners are situated (Burns' Ann Statutes 1926, Sec 6167), and the issues in the proceeding must be heard and decided by the court. The statute denominates the proceeding an "action" and provides that "any person named in such petition as the owner of lands shall have ten days, exclusive of Sunday, and the day for docketing such action after such docketing, to file with said court any demurrer, remonstrance or objection he may have to the form of said petition . . . ." The statute further provides that "if within twenty days, exclusive of Sundays, from the day set for the docketing of such petition, two-thirds in number of the landowners named as such in such petition, or who may be affected by any assessment or damages . . . shall remonstrate in writing against the construction of such drain or ditch, such petition shall be dismissed at the costs of the petitioners. . . . If no remonstrance shall be filed, and the court deems said petition sufficient, such court shall make an order referring the same to the drainage commissioners above provided for: . . . ." Burns' Ann Statutes 1926, Sec 6169.

The Supreme Court of Indiana has held that parties who have signed a remonstrance against the construction of a drain have the right to withdraw their names from such remonstrance at any time prior to the expiration of the period fixed by the

statute within which a remonstrance may be filed, but that after such period has expired the name of a signer may not be withdrawn. Noel v. Van Fleit et al., supra; Note: 15 A & E Ann Cas, pp 1127–1128. In Noel v. Van Fleit et al., supra, the court said:

"It is the contention of appellants that the withdrawal of certain remonstrators on the twentieth day, exclusive of Sundays, after the docketing of the cause, did not defeat or render ineffective the two-thirds remonstrance, and that such withdrawals were too late to invalidate the remonstrance. Such contention cannot be sustained. . . . If the withdrawals are filed within the period of twenty days, exclusive of Sundays, from the day set for the docketing of the petition, and if, at the expiration of that period, there are not two-thirds in number of the landowners named in the petition, or who may be affected by any assessment or damages, remaining on the remonstrance, then, in that event, the remonstrance is ineffective and of no force. The withdrawals in the instant case, having been made within the twenty-day period, are effective, and defeat and render ineffective the two-thirds remonstrance."

In State v. Gerhardt, 145 Ind 439, 44 NE 469, 33 LRA 313, the Supreme Court of Indiana had occasion to consider the right of signers to a remonstrance against the granting of a liquor license to withdraw their names. The Indiana statute authorized a board of county commissioners to grant a liquor license but made the granting of such license "subject to the condition and restriction that no remonstrance against the same, signed by a majority of the legal voters of the specified districts, was filed with the auditor three days prior to the beginning of a regular session, at which the application therefor was made." (145 Ind 648). In the opinion in that case the court said: "Until the beginning of this three days' period, whether the remonstrance had been placed on file or not, any remonstrator must be deemed to have absolute right, by some affirmative act of his own, to withdraw his name from such remonstrance." (145 Ind at p 473). The rule was re-affirmed in Davis v. Affleck, 34 Ind App 572, 73 NE 283.

There are obvious differences between the statutes of Indiana and the statutes of this state relating to the establishment and construction of drains. In Indiana the proceeding for the establishment of a drain is an "action" in court. A remonstrance must be in writing, signed by the remonstrators and filed in such action. The statute fixes a specific limit upon the time within which a remonstrance may be filed,—as a limited period is fixed for interposing answer or demurrer in an action or judicial proceeding. If no remonstrance is filed it becomes the duty of the court to consider the sufficiency of the petition and if it finds the petition to be sufficient then the court is required to make the prescribed order. The laws of this state do not require a remonstrance or petition for discontinuance of the proceedings to be in any particular form. And, as is pointed out in the former decision our laws do not in terms fix a definite time within which a remonstrance must be filed. It is further pointed out that the section (61–2115), providing for the discontinuance of proceedings for the construction of a drain upon petition of two-thirds of the landowners whose land is subject to assessment for the construction of the drain must be construed together with the preceding section (61–2114 as amended by SL 1945, ch 327); and when so construed a remonstrance or petition to discontinue the proceedings may be filed or names may be withdrawn from a remonstrance or petition that has been filed at any time during the hearing held pursuant to RC 1943, Sec 61–2114 as amended by SL 1945, ch 327, s 1. That these two sections must be construed together is clearly shown by reverting to the original enactment containing these provisions. These sections were enacted as part of ch 125, Laws 1911. We quote from such enactment:

"Upon the filing of the surveyor's report the board of drain commissioners shall fix a date and public place for hearing objections to the petitions and such place for hearing shall be located at some point in the vicinity of the land which will be affected by such drain and that will be the most convenient point for the majority of the land owners affected by the proposed drain to attend. At least ten days' notice of such hearing shall be given by causing five notices to be posted along the line

of the proposed drain at such points as will be likely in the opinion of the board to secure the greatest publicity, and in addition a notice shall be sent by registered mail to the last known address of each and every owner of land which may be affected by the proposed drain. Notices of this hearing shall contain a copy of the petition and a statement of the date of filing of the surveyor's report and the date when the board will act upon the petition, and must be signed by the members of the board or a majority thereof. All persons whose land may be affected by any such drain may appear before the board of drain commissioners and fully express their opinion and offer evidence upon the matters pertaining thereto. Should two-thirds of the land owners whose land is subject to assessment for the construction of the proposed drain believe that the benefits to be derived are not equal to the expense of the construction, they may petition the board of drain commissioners to have further proceedings discontinued, whereupon the said board shall by resolution order further proceedings discontinued."

While there are many differences between the laws of Indiana and the laws of this state relating to the construction of drains, there is no difference between the rule announced by the Supreme Court of Indiana as to the right of a signer to a remonstrance to withdraw his name therefrom and the rule which has been announced in the former decision in this case. The Supreme Court of Indiana held that a signer to a remonstrance may withdraw his name at any time prior to the expiration of the period within which a remonstrance may be filed but may not withdraw his name after such period has expired. The Indiana statute fixed a definite period in terms of days within which a remonstrance may be filed. The laws of this state fixed no definite period in terms of days or weeks after a petition for the construction of a drain has been filed within which a remonstrance must be filed. But our laws require the board of drain commissioners to fix a time and place for hearing objections to the petition and at such hearing landowners whose land is subject to assessment for the construction of the proposed drain may petition the board to have further proceedings discontinued. In the former opinion we held that such remonstrance or peti-

tion to discontinue may be filed at any time "during such hearing and until the close thereof, but not thereafter"; and that those who have signed a remonstrance or petition for discontinuance may withdraw their names at any time until the time for filing a remonstrance or petition for discontinuance has ended; and that such time expires only when the hearing is closed.

The right to be heard and to offer evidence upon matters pertaining to the establishment of the drain, and to make objection is afforded to "all persons whose lands may be affected" by the drain without regard to whether their lands are subject to assessment for the construction of the proposed drain; but an owner of land which is subject to assessment for the construction of the proposed drain also has the right to "petition the board to have further proceedings discontinued." It is only pursuant to a hearing, as prescribed by RC 1943, Sec 61–2114, that the board can take action. If a petition for discontinuance is presented, it is incumbent upon the board to ascertain and determine whether the petition is signed by a majority of the landowners whose land is subject to assessment for the construction of the proposed drain. If a majority of the landowners whose land is subject to assessment have petitioned that further proceedings be discontinued, then it is the duty of the board to adopt a resolution to that effect. If on the other hand a majority of the landowners whose land is subject to assessment have not petitioned that further proceedings be discontinued, then it is equally the duty of the board to deny the petition for discontinuance and to determine the questions that are presented by the petition for the establishment of the drain.

We adhere to what we said in the former opinion: "Remonstrances could be filed and withdrawals from such remonstrances made during such hearing and until the close thereof, but not thereafter. That is to say, withdrawals could be made from the remonstrances until the board had passed upon the sufficiency thereof and until it adopted a resolution ordering a discontinuance of proceedings."

Plaintiffs further contend that even though the statute permits a signer to withdraw his signature from a remonstrance or petition for discontinuance at any time during the hearing

and until the close thereof, the boards of drain commissioners by a mimeographed statement transmitted with the notice of hearing limited the time within which a remonstrance or petition for discontinuance might be filed to the hour specified in the notice for the commencement of the hearing, and that consequently the time for withdrawal of signatures from the remonstrance or petition for discontinuance became and was limited to the same time.

We think the contention is devoid of merit. The record shows that there was published and transmitted to the several landowners by registered mail a notice as prescribed by RC 1943, Sec 61–2114 as amended by SL 1945, ch 327, s 1. The notice set forth the petition for the establishment of the drain and recited that:

"Notice is further given, That the surveyors report and map of said proposed drain with profiles, plans and specifications therefor, and the estimate of cost of said drain and map of the lands drained, in duplicate have been filed with the County Auditor of the County of Walsh and the County Auditor of Pembina County, State of North Dakota, and with the Board of Drain Commissioners of Walsh and Pembina Counties, and said duplicates and maps, and profiles and plans and specifications of the proposed drain and said estimate of cost thereof are now on file in said offices subject to inspection.

"You are hereby further notified that said Boards of Drain Commissioners of Walsh and Pembina Counties have set the 8th day of January, 1946, at the hour of two o'clock P.M. in the Drayton City Hall, in Drayton City, Pembina County, North Dakota, as the time and place for hearing objections to said petition and that at the aforesaid time and place the undersigned Drain Commissioners will meet and convene for the purpose of hearing objections to said petition, and all persons whose lands may be affected by the proposed drain may appear before the said Boards at the aforesaid time and place and fully express their opinion and offer evidence upon the matters pertaining to the establishment of said drain."

Mr. Felson, who served as secretary of the boards, prepared a mimeographed statement with reference to the meeting. He

calls attention to the time and place of the meeting and the lands that will be affected by the drain and quotes the estimate of costs and the items thereof as made by the Soil Conservation Service. He closed the letter with the following statement:

"Before said drain can be established a majority of the landowners whose lands are affected must approve of the outlay. If a majority of the landowners affected or likely to be assessed for benefits object and request proceedings discontinued no further proceedings may be had. They the said landowners may petition the Drain Commissioners to stop further proceedings, in other words, if a majority of the landowners affected thereby are of the opinion the proposed drain will cost more than the benefits to be derived therefrom and so petition the drain commissioners to stop proceedings, drain commissioners must deny request for drain. Thus the landowners in said drainage are to have the opportunity to file objections. Bear in mind that said petition or petitions or objections must be filed with drain commissioners, both boards, on or before two o'clock P.M. January 8th, 1946, so said boards will have same for the meeting in Drayton January 8th. Same may be presented at said meeting in Drayton. All landowners who fail to appear or file objections as herein set forth are counted as in favor of the establishment of said drain.

Yours truly,

/s/ Wm. W. Felson

William W. Felson, Cavalier, N. Dak."

The mimeographed statement does not purport to be a communication from the drain boards. It is a communication from Mr. Felson. The statement makes no reference to withdrawal of signatures from a remonstrance or petition to discontinue the proceedings. The statement does refer to the right of landowners to "petition the drain commissioners to stop further proceedings" and if a landowner was opposed to the construction of the drain and desired to have further proceedings discontinued and had followed the suggestion or advice contained in the statement, his rights would have been protected and preserved in every particular. In our opinion this statement did not and could not have the effect of limiting the time within

which a signor on a remonstrance or petition to discontinue proceedings for the establishment of a drain might exercise his legal right to withdraw his name from a remonstrance or petition for discontinuance of the proceedings.

The petition for a rehearing is denied.

CHRISTIANSON, C. J., NUESSLE and BURKE, JJ., and THOM, District J., concur.

BURR and MORRIS, JJ., did not participate.