Harry GERSHMAN, Fanny Gershman, Louis Gershman, and Susan Gershman, Plaintiffs and Respondents,

v.

Ralph ENGELSTAD, Defendant and Appellant.

Civ. No. 8472.

Supreme Court of North Dakota.

July 3, 1968.

Gordon Caldis, Grand Forks, for plaintiffs and respondents.

Shaft, Benson, Shaft & McConn, Grand Forks, for defendant and appellant.

STRUTZ, Judge.

This case arises out of the sale of an apartment building in Grand Forks. The defendant, who was a building contractor, had built the apartments as a personal investment. For business reasons, he was required to move from Grand Forks to the State of Nevada, and, approximately eighteen months after the building was completed, he put it up for sale. At the time the building was erected, the defendant had been in the contracting business some four or five years.

Some time after the plaintiffs had purchased the apartments from the defendant, they began to experience difficulty with the plumbing. The swimming pool also deteriorated. Cement in a retaining wall and in a portion of the sidewalk outside the building began to break up. The plaintiffs thereupon brought this action for damages for false and fraudulent representations made by the defendant to the plaintiffs which, it is alleged, were relied upon by the plaintiffs and which induced them to enter into the contract of purchase.

The case was tried to the jury. At the close of all of the evidence, both parties moved for a directed verdict under Rule 50(a), North Dakota Rules of Civil Procedure. Both of these motions were denied.

The court then submitted the case to the jury, but the jury was unable to arrive at a verdict, and was discharged. Within ten days after the discharge of the jury, both parties made motions for judgment in accordance with the motion each had made for a directed verdict. Both of these motions for judgment in accordance with motions for directed verdict, which each had made at the close of all of the evidence, were denied by the trial court. One order was entered. It denied both motions for judgment notwithstanding disagreement of the jury and granted the plaintiffs' alternative motion for new trial. In view of the fact that the court denied both motions for judgment notwithstanding disagreement of the jury and no verdict was rendered, the case stood for retrial notwithstanding the order granting a new trial. Therefore, the only question on this appeal is whether the trial court erred in denying the defendant's motion for judgment notwithstanding the disagreement of the jury.

At the outset, we are met with the plaintiffs' motion to dismiss the defendant's appeal to this court on the ground that the order from which the defendant attempts to appeal is not an appealable order. The plaintiffs cite the case of Stormon v. District Court of Pierce County, 76 N.D. 713, 38 N.W.2d 785. In the *Stormon* case, this court held:

"An order denying a motion for judgment notwithstanding a disagreement of jury is not appealable but is reviewable on appeal from final judgment."

At the time of the decision in the *Stormon* case, the law provided that if a motion for directed verdict made at the close of all of the evidence is not granted, the court is deemed to have submitted the case to the jury subject to a later determination of the legal questions raised by the motion. Where the jury fails to reach a verdict, the court may, on proper motion, direct the entry of judgment as if the requested verdict had been directed, or may order a new trial. Sec. 28-1510, N.D.R.C.1943. The statute then went on to provide that if a motion for judgment notwithstanding failure of the jury to arrive at a verdict is denied,

"* * * the supreme court, on appeal from the judgment, may order judgment to be entered when it appears from the testimony that a verdict should have been

so directed, * * *." Sec. 28–1511, N.D. R.C.1943.

Thus, at the time of the *Stormon* decision, the statute specifically provided that this court, "on appeal from the judgment," may order such judgment. Thus an appeal, at the time of the *Stormon* decision, had to be from the judgment.

This statute, however, has been amended since the *Stormon* decision by enactment of Chapter 204 of the Session Laws of 1951. Our law now provides that the Supreme Court may review the ruling on the motion for directed verdict on appeal from the judgment, and—

"* * * It also may so order on appeal from an order denying a motion for judgment notwithstanding the verdict, or on appeal from an order denying a motion for judgment in accordance with the motion for a directed verdict if no verdict was returned. * * *" Sec. 28–27–29.1, N.D.C.C.

■ Thus, since 1951, we have had specific statutory authority for appeal to this court from an order made on a motion for judgment or for a new trial made in accordance with a motion for directed verdict, where no verdict was returned. On such appeal, this court is authorized to review the whole order. This court has recently permitted and considered an appeal from an order made on a motion for judgment notwithstanding the disagreement of the jury, which order denied such motion but granted a new trial. Peterson v. Rude (N.D.), 146 N.W.2d 555.

Having determined that this is an appealable order, we now consider the case on its merits. The basis of the plaintiffs' cause of action is fraud.

■ There is no general rule for determining what facts will constitute fraud. Whether there were fraudulent representations or not in a given case must depend upon the facts in each case.

■ This court has held that fraud will not be presumed, but must be affirmatively proved by the one who relies upon it. Chester v. Einarson, 76 N.D. 205, 34 N.W. 2d 418, 35 N.W.2d 137; Zimmerman v. Kitzan (N.D.), 65 N.W.2d 462; Hoffer v. Crawford (N.D.), 65 N.W.2d 625; Leach v. Kelsch (N.D.), 106 N.W.2d 358; City of Granville v. Kovash, Inc. (N.D.), 118 N.W. 2d 354.

■ While fraud may be inferred [Adams v. Little Missouri Minerals Association (N.D.), 143 N.W.2d 659], we find no basis in the evidence on which fraud may be inferred in this case.

■ Mere commendatory statements which come within the bounds of "dealer's talk" do not constitute fraud, and an action for fraud will lie only for false representations of matters of fact. Hence, statements of opinion, as, for example, expressions by the seller commending the thing he is selling, have been held not actionable even though they are false. These expressions come within the term generally referred to as "puffing" and are considered mere dealer's talk. The great jurist Learned Hand explained the use of such expressions in the following language:

"The reason of the rule lies, we think, in this: There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity. If we were all scrupulously honest, it would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it. Such statements, like the claims of campaign managers before election, are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth." Vulcan Metals Co. v. Simmons Mfg. Co., 2 Cir., 248 F. 853, at p. 856.

■ Thus the representations relied upon must be statements of fact, must be false, and must be as to one's own knowledge to be made the basis for an action for fraud. Let us now see what representations were made by the defendant in this case which the plaintiffs claim were fraudulent.

In response to a question by his counsel whether anything was said by the defendant about the construction of the building which the plaintiffs were purchasing, the plaintiff Louis Gershman testified:

"Q. What did he, Mr. Engelstad, state?

"A. We were discussing the building itself and construction and so on. Of course, we always do that before you buy something, especially at that price. He said, 'Well, you have nothing to worry about', he says—'I built this for myself'—he says, 'I was going to keep this building until this other deal came up'. He said, 'I watched everything that went on; I built it with the best.' He told me it's the best building in Grand Forks. I remember this because I said, 'It better be for the amount of money involved.' He said, 'I built it for myself'.

"Q. Did he make any representation as to materials?

"A. He said it was the best.

"Q. Did he make any representation as to the methods that had been used in designing the building?

"A. He said it was so far as he was concerned it was the best building in Grand Forks and he said it's the best construction, the best labor—his own crews, and he has watched every nail hole. He said he knew that building—it was his own."

Again, the plaintiff Louis Gershman was asked:

"Q. Were there any other conversations concerning representation?

"A. Just casually talking about the construction, because it is a beautiful building. We were standing outside of it one time and he said, 'It's like the Rock of Gibraltor'. He was very proud of it. I remember that conversation because he said it was the best, that the best was put in that building. I remember him telling this, that it was $10,000.00 a

unit and I said it should be of the best construction. I remember the casual converation."

The plaintiff Louis Gershman further testified:

"Q. Now, did you believe these representations, Mr. Gershman, that he had made to you on these occasions?

"A. Yes, sir."

The plaintiff Harry Gershman also testified as to relying upon certain representations made by the defendant at the time the deal was being closed. However, on cross-examination, this witness admitted that statements made by the defendant did not influence him in purchasing the apartments because they had already purchased the property before such statements were made in his presence. The record shows the following:

"Q. I am talking about this meeting, the impression it had on you when Mr. Engelstad said you were getting a good deal; when he said he built it for himself of the best materials and when he said he watched every nail hole go into it; when he said that—I'm sorry—when he said those things, that did not influence you at all as to whether or not you were going to buy it?

"A. No, it was already purchased."

So the representations on which the plaintiffs relied were those made to the plaintiff Louis Gershman to the effect that the plaintiffs had nothing to worry about, that the defendant had built the building for himself and that he had intended to keep the building until "this other deal came up"; that the building was constructed with the best materials and was the best building in Grank Forks; and that the best construction and the best labor had gone into it.

Some time after the purchase of the building, difficulties developed. The retaining wall began to disintegrate; the plumbing began to give trouble, and a pipe

in the walls sprang a leak, the escaping water causing some damage; the sidewalk began to go to pieces; and the walls of the swimming pool began to disintegrate.

The record discloses that the water pipes in the apartment building had been laid under cement and could be repaired only by breaking the cement. The plaintiffs contend, among other things, that since the pipes were under cement they were not visible and that the defendant should be held liable for fraudulently failing to disclose this fact to them.

■ In the course of the trial, the plaintiffs called the plumber who made the repairs to the pipes. He told how he had to drill holes through the cement in trying to locate the leak. He did not state that the method used by the defendant in laying the pipes was improper, but testified, in response to an inquiry by plaintiffs' counsel whether this type of installation made by the defendant met with the best practice in the trade:

"A. Well, it's not up to me to say that but according to my knowledge, I wouldn't have it that way."

This witness further testified:

"A. Well, it would be better if you had it in a chaseway, where the pipes could be free."

There was no evidence to indicate that the method of laying the pipes by the defendant was considered improper in the plumbing trade, but only that the best method would have been to have the pipes accessible. There is nothing in the record to indicate that the defendant suppressed any material facts with intent to deceive. In order to sustain an action for fraud, plaintiffs must show that the defendant made a false representation of a material fact, knowing it to be false, or made a representation as of knowledge, when he did not in fact know, with intent to induce the plaintiffs to rely on it, and, further, that the plaintiffs did in fact rely on it to their damage. Leach v.

Kelsch (N.D.), 106 N.W.2d 358; Sperle v. Weigel (N.D.), 130 N.W.2d 315.

In connection with the plaintiffs' claim for damages for breakup of a part of the sidewalk, the plaintiffs' witness testified that the work of laying the sidewalk could be criticized because no expansion joints had been put in to allow for expansion and contraction. He also testified that no reinforcement rods had been placed in the concrete. On cross-examination, however, this witness admitted that while the best practice would be to use reinforcement rods in the cement, that is not required by the city. As to the defendant's failure to put expansion joints in the sidewalk for expansion and contraction, such omission was plainly visible to anyone who walked over the sidewalk.

On the basis of the above record, did the plaintiffs affirmatively prove fraud on the part of the defendant, as required, since fraud never will be presumed?

It has been held that statements and representations made by a seller who built the house, that there would be no water in the basement, was not a mere expression of opinion as to the dryness of the basement, but could be understood by the buyer as meaning that the construction of the house was such as to preclude the entrance of water into the basement and was made by the seller as of his own knowledge, and was a false representation of a material fact. Pietrazak v. McDermott, 341 Mass. 107, 167 N.E.2d 166.

Again, where the seller, who had built it, represented that the foundation of a home was properly constructed, but where such statement was false because air vents which were required by a city ordinance had not been placed in the foundation, it was held that an action for fradulent representations would lie. The court held that a positive representation that the foundation was properly built would be a representation that the requirements of the ordinance had been complied with and it was not a mere expression of opinion. Doran v. Milland

Development Co., 159 Cal.App.2d 322, 323 P.2d 792.

And in the Michigan case of Crook v. Ford, 249 Mich. 500, 229 N.W. 587, where the builder, in selling a home, represented to the purchaser that the foundation of the house had been constructed in a workmanlike manner, but where the foundation settled, causing the walls and the ceilings to crack and causing the home to sink so much that the furnace tipped over, such representations were held to be fraudulent and actionable.

On the other hand, where the vendor, who also was the builder of the house, told the plaintiff, as prospective buyer, that he was perfectly safe on the construction because he had built the house himself and that the buyer never would regret having purchased it, it was held that such representations were merely indefinite generalities of exaggeration and were not actionable. Milkton v. French, 159 Md. 126, 150 A. 28.

In the above case, it was pointed out that the plaintiff was an architect with considerable experience.

In another case, where the vendor also was the builder of the house, he represented to the purchaser that it was a well-built house and had a good concrete floor and good foundation walls, it was held that such representations were not actionable and were merely statements of opinion. Fogarty v. Van Loan, 344 Mass. 530, 183 N.E.2d 111.

In the case at bar, the seller also was the builder of the apartment building in question. The buyers, on the other hand, were very experienced, capable, and successful businessmen. The record shows that they own and operate other successful businesses, including a motel. They were cautious buyers, for the record shows that, while the defendant asked $125,000 for the property he was selling, he was finally induced by the plaintiffs to accept $115,000. They carefully inspected the property they were buying.

On this record, we cannot find that the defendant's representations, which were in very general terms such as "It's the best building in Grank Forks"; "You are going to purchase the best" ; that the plaintiffs had "nothing to worry about, . . . I built this for myself" ; "I watched everything that went on" ; "I built it with the best" ; and that the building was represented as "the best"; were fraudulent representations upon which an action for fraud could be based. We find no misrepresentation of fact, in that the plaintiff Louis Gershman himself testified that defendant's representations as to methods of construction were just casually stated: that it was a new building; that everything had been done by the defendant; and that he knew it was good; and defendant had further stated that, so far as he was concerned, it was the best building in Grand Forks, and "it's the best construction, the best labor" and "he has watched every nail hole." We believe that these expressions, under the circumstances, were mere expressions of opinion and not false representations of material facts. General expressions of opinion by a seller, commendatory of the thing he is selling, are not actionable even though not entirely true.

On the record we have before us, we would have been forced to set aside a judgment for the plaintiffs, had the jury returned a verdict in their favor. Where the evidence is such that any verdict returned for the plaintiffs by the jury would have had to be set aside, the defendant's motion for judgment in accordance with a prior motion for directed verdict, made after the jury failed to reach a verdict, should have been granted.

For reasons stated in this opinion, the order of the trial court granting a new trial is reversed and the plaintiffs' complaint is ordered dismissed.

TEIGEN, C. J., and ERICKSTAD, PAULSON, and KNUDSON, JJ., concur.